Gajanan **VENGURLEKAR** and Umesh **Pachpande**, individually and on behalf of all others similarly situated, Plaintiffs,

v.

**SILVERLINE TECHNOLOGIES, LTD.,** Seranova, Inc., Silverline Technologies, Inc., Dr. Nirmal Jain, Ravi Subramanian, Kulathu Subramanian and Doe Corporations 1–20, Defendants.

No. 02 Civ. 7724(SAS).

United States District Court, S.D. New York.

Nov. 24, 2003.

---

Lee Squitieri, Squitieri & Feraon, LLP, New York City, for Plaintiffs.

Neil A. Capobianco, Greenberg Traurig, LLP, New York City, for Defendants.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

Plaintiffs Gajanan Vengurlekar and Umesh Pachpande bring this class action alleging violations of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* ("ERISA"), the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and the New Jersey Wage Payment Law, N.J.S.A. § 34:11–4.2 ("NJWPL"). Plaintiffs have also asserted state common law claims for breach of contract, quantum meruit, and unjust enrichment. Plaintiffs bring this action on behalf of themselves and all others similarly situated

> who were and/or are employed by Silverline Technologies, Inc. and/or SeraNova, Inc. from January 1, 2001 through the present (the "Class Period") who were not paid wages, salaries and other compensation and/or whose withheld taxes were not remitted to the appropriate authorities

and/or whose pension plan contributions (either employer contributions or employee contributions) were not deposited in the pension plan accounts of the plaintiffs and the proposed class.

Plaintiff's Memorandum of Law in Support of Motion for Class Certification ("Pl.Mem.") at 1. *See also* Amended and Supplemental Class Action Complaint ("Cmplt."), Ex. A to the Affidavit of Lee Squitieri ("Squitieri Aff."), plaintiffs' attorney, ¶ 1.

Plaintiffs ask this Court to certify a class under Federal Rule of Civil Procedure 23(b)(2) with regard to their ERISA and state statutory wage claims. Alternatively, plaintiffs seek certification of all their claims under Rule 23(b)(3). For the following reasons, plaintiffs' requests for class certification are denied in their entirety.

## I. BACKGROUND

Vengurlekar and Pachpande were employees of SeraNova, Inc. during the Class Period. *See* Cmplt. ¶¶ 4 & 5. Both allege that defendants failed to: compensate them, remit withholding taxes to the appropriate authorities,[1] and credit their pension accounts.[2] *See id.* Plaintiffs were employed in the state of North Carolina as computer professionals.[3] *See* Declaration of Sharmila Sherika ("Sherika Decl."), Human Resources Manager for Silverline Technologies, Inc., ¶¶ 3, 5 & 7. Vengurlekar was a Project Manager and Pachpande was a Senior Consultant, exempt positions that did not entitle them to overtime compensation. *See id.* ¶¶ 4 & 6.

Defendant SeraNova, Inc. ("SeraNova") is a wholly-owned subsidiary of defendant Silverline Technologies, Inc. ("Silverline USA").

---

1. This Court is unaware of any statute that confers a private cause of action for the failure to remit withheld taxes to the proper taxing authority. *See, e.g., McDonald v. Southern Farm Bureau of Life Ins. Co.*, 291 F.3d 718, 726 (11th Cir.2002) (holding that no private right of action may be implied under the Federal Insurance Contributions Act). In any event, the failure to remit taxes claim is not mentioned in any of plaintiffs' six causes of action and is therefore presumed abandoned.

2. Contrary to the allegations contained in the Complaint and unlike Pachpande, Vengurlekar does not assert a claim for unpaid wages. *Com-*

*pare* Declaration Under Penalty of Perjury of Gajanan Vengurlekar, Ex. B to the Squitieri Aff., ¶ 5 *with* Declaration Under Penalty of Perjury of Umesh Pachpande; Ex. D to the Squitieri Aff., ¶¶ 5 & 8 (stating that defendants failed to pay his salary from July 2002 through September 2002).

3. According to payroll charts produced by defendants, SeraNova and Silverline USA had 248 employees who resided in twenty-six different states, with the vast majority residing in New Jersey. *See* Declaration of Neil A. Capobianco, defendants' attorney, ¶ 3. Neither plaintiff worked in New Jersey during the relevant period. *See* Sherika Decl. ¶¶ 3 & 5.

*See* Cmplt. ¶ 7. Both SeraNova and Silverline USA are Delaware corporations headquartered in New Jersey. *See id.* ¶¶ 7 & 8. Silverline USA is a wholly-owned subsidiary of Silverline Technologies, Ltd. ("Silverline Limited"), the parent company which is also headquartered in New Jersey. *See id.* ¶ 9. Plaintiffs allege that Silverline Limited is the alter ego of both SeraNova and Silverline USA and that all of the corporate defendants constitute a single employer. *See id.* ¶ 13. The individual defendants are alleged to be current or former officers of Silverline USA.[4] *See id.* ¶¶ 10–12. In August of 2003, SeraNova and Silverline USA filed for bankruptcy under Chapter 7 of the United States Bankruptcy Code. *See* 9/9/3 Letter from Neil A. Capobianco.

## II. STANDARD FOR CLASS CERTIFICATION

■ Rule 23 of the Federal Rules of Civil Procedure sets forth the requirements for bringing and maintaining a class action in federal court. *See* Fed.R.Civ.P. 23. " 'In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.' " *In re Visa Check/MasterMoney Antitrust Litig.,* 280 F.3d 124, 133 (2d Cir.2001), *cert. denied,* 536 U.S. 917, 122 S.Ct. 2382, 153 L.Ed.2d 201 (2002) (quoting *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974)). While this Circuit has "directed district courts to apply Rule 23 according to a liberal rather than a restrictive interpretation," *In re NASDAQ Market-Makers Antitrust Litig.,* 169 F.R.D. 493, 504 (S.D.N.Y.1996) (citing *Korn v. Franchard Corp.,* 456 F.2d 1206, 1208–09 (2d Cir.1972)), a court may not grant certification unless it is satisfied, after " 'rigorous analysis,' " that the criteria set forth in Rule 23 are met. *See Dodge v. County of Orange,* 208 F.R.D. 79, 87 (S.D.N.Y.2002) (quoting *General Tel. Co. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)). Plaintiffs bear the burden of establishing each requirement for class certification. *See Pecere v. Empire Blue Cross and Blue Shield,* 194 F.R.D. 66, 69 (E.D.N.Y.2000).

■ The district court must accept all of the allegations in the pleadings as true on a motion for class certification, and avoid conducting a preliminary inquiry into the merits. *See In re Indep. Energy Holdings PLC Sec. Litig.,* 210 F.R.D. 476, 478 (S.D.N.Y.2002). Nonetheless, the decision whether to certify a class " 'may involve some considerations related to the factual and legal issues that comprise the plaintiff's cause of action.' " *Pecere,* 194 F.R.D. at 69 (quoting *D'Alauro v. GC Servs. Ltd.,* 168 F.R.D. 451, 454 (E.D.N.Y.1996)). *See also Daniels v. City of New York,* 198 F.R.D. 409, 413 n. 5 (S.D.N.Y. 2001) (noting that the court need not rely on the bare allegations but "may consider the range of proof necessary to support class certification"). "[A]ffirmative defenses should [also] be considered in making class certification decisions." *Waste Mgmt. Holdings, Inc. v. Mowbray,* 208 F.3d 288, 295 (1st Cir.2000). *See also Castano v. American Tobacco Co.,* 84 F.3d 734, 744 (5th Cir.1996) (explaining that "a court must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues").

## III. REQUIREMENTS FOR CLASS CERTIFICATION

To be certified as a class under Rule 23 of the Federal Rules of Civil Procedure, plaintiffs must satisfy all four requirements of subsection (a) and must prove that the class is "maintainable" as defined in subsection (b).

### A. Rule 23(a)

Rule 23(a) permits one or more members of a class to sue as representative parties only if "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the

---

4. The only individual defendant to have answered is Ravi Subramanian. *See* Answer of Defendants Silverline Technologies, Ltd., Sera-

Nova, Inc., Silverline Technologies, Inc., and Ravi Subramanian, Ex. C to the Squitieri Aff.

claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a).

### 1. Numerosity

▇ Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." "Impracticability does not mean impossibility of joinder, but rather difficulty or inconvenience of joinder." *Indep. Energy,* 210 F.R.D. at 479 (citing *In re Avon Sec. Litig.,* No. 91 Civ. 2287, 1998 WL 834366, at *5 (S.D.N.Y. Nov.30, 1998)). Although precise calculation of the number of class members is not required, *see Robidoux v. Celani,* 987 F.2d 931, 935 (2d Cir.1993), and it is permissible for the court to rely on reasonable inferences drawn from available facts, *see McNeill v. New York Hous. Auth.,* 719 F.Supp. 233, 252 (S.D.N.Y.1989), numbers in excess of forty generally satisfy the numerosity requirement. *See Trief v. Dun & Bradstreet Corp.,* 144 F.R.D. 193, 198 (S.D.N.Y.1992).

### 2. Commonality

▇ Commonality requires a showing that common issues of fact or law affect all class members. *See* Fed.R.Civ.P. 23(a)(2); *see also Trief,* 144 F.R.D. at 198. The commonality requirement may be met when individual circumstances of class members differ, but " 'their inquiries derive from a unitary course of conduct.' " *Dodge,* 208 F.R.D. at 88 (quoting *Marisol A. v. Giuliani,* 126 F.3d 372, 377 (2d Cir.1997)). A single common question may be sufficient to satisfy the commonality requirement. *See German v. Federal Home Loan Mortgage Corp.,* 885 F.Supp. 537, 553 (S.D.N.Y.1995). "The critical inquiry is whether the common questions are at the 'core' of the cause of action alleged." *D'Alauro,* 168 F.R.D. at 456; *see also In re "Agent Orange" Prod. Liab. Litig.,* 818 F.2d 145, 166–67 (2d Cir.1987).

### 3. Typicality

▇ A named plaintiff's claims are "typical" under Rule 23(a)(3), where each class member's claims arise from the same course of events and each class member makes similar legal arguments to prove defendants' liability. *See Robinson v. Metro–North Commuter R.R. Co.,* 267 F.3d 147, 155 (2d Cir. 2001). " 'While it is settled that the mere existence of individualized factual questions with respect to the class representative's claim will not bar class certification, class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation.' " *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 222 F.3d 52, 59 (2d Cir.2000) (quoting *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 903 F.2d 176, 180 (2d Cir.1990) (internal citation omitted)).

### 4. Adequacy of Representation

▇ Plaintiffs must also show that the proposed action will fairly and adequately protect the interests of the class. *See* Fed. R.Civ.P. 23(a)(4); *Banyai v. Mazur,* 205 F.R.D. 160, 164 (S.D.N.Y.2002). To do so, plaintiffs first must demonstrate that "class counsel is qualified, experienced, and generally able to conduct the litigation." *In re Drexel Burnham Lambert Group, Inc.,* 960 F.2d 285, 291 (2d Cir.1992). The proposed class representatives are also required to show that they have no interests that are antagonistic to the proposed class members. *See id.; see also Robinson,* 267 F.3d at 170 (noting Rule 23(a)(4) requires an "absence of conflict" between the named representatives and the class members, as well as "vigorous prosecution").

### B. Rule 23(b)(2)

Rule 23(b)(2) provides that a class action may be maintained if the requirements of Rule 23(a) are satisfied and the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole. *See* Fed.R.Civ.P. 23(b)(2).

Class actions under Rule 23(b)(2) are proper if injunctive or declaratory relief would be appropriate for an entire class. The Rule may be utilized if a party's action or inaction affects an entire class seeking re-

lief. As a general rule, class certification under Rule 23(b)(2) is improper if the primary relief sought by the action is monetary damages. However, if money damages are merely incidental to plaintiffs' request for injunctive or declaratory relief, class actions may be certified under Rule 23(b)(2).

*Bolanos v. Norwegian Cruise Lines Limited,* 212 F.R.D. 144, 156–57 (S.D.N.Y.2002) (internal quotation marks and citations omitted). The Second Circuit has provided the following guidance in determining if money damages are primary or incidental:

> [a]lthough the assessment of whether injunctive or declaratory relief predominates will require an ad hoc balancing that will vary from case to case, before allowing (b)(2) certification a district court should, at a minimum, satisfy itself of the following: (1) even in the absence of a possible monetary recovery, reasonable plaintiffs would bring the suit to obtain the injunctive or declaratory relief sought; and (2) the injunctive or declaratory relief sought would be both reasonably necessary and appropriate were the plaintiffs to succeed on the merits. Insignificant or sham requests for injunctive relief should not provide cover for (b)(2) certification of claims that are brought essentially for monetary recovery.

*Robinson,* 267 F.3d at 164.

### C. Rule 23(b)(3)

Plaintiffs request certification under Rule 23(b)(3) should this Court find certification under Rule 23(b)(2) to be inappropriate. Plaintiffs argue that this action falls within subsection (b)(3) because "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and ... a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).

### 1. Predominance

 "In order to meet the predominance requirement of Rule 23(b)(3), a plaintiff must establish that the issues in the class action that are subject to generalized proof,

and thus applicable to the class as a whole ... predominate over those issues that are subject only to individualized proof." *Visa Check,* 280 F.3d at 136 (internal quotation marks and citation omitted). The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Moore v. PaineWebber, Inc.,* 306 F.3d 1247, 1252 (2d Cir.2002). The 23(b)(3) predominance requirement is far more demanding than the commonality requirement of Rule 23(a). *See Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623–24, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).

Because Rule 23(b)(3) requires that common issues predominate, courts often deny certification where common issues of law are not present or where resolving the claims for relief would require individualized inquiries. *See, e.g., Lewis Tree Serv., Inc. v. Lucent Techs. Inc.,* 211 F.R.D. 228, 235 (S.D.N.Y. 2002) ("At a basic level, a nationwide class action in which plaintiffs raise claims of fraud would require the application of the law of at least fifty jurisdictions and would make class certification inappropriate."); *In re Methyl Tertiary Butyl Ether ("MTBE"),* 209 F.R.D. 323, 350 (S.D.N.Y.2002) (finding no predominance given plaintiffs' allegation that MTBE contamination occurred "over many years across four states indirectly caused by twenty defendants in conjunction with innumerable third parties who released the contaminant into the environment").

### 2. Superiority

The superiority question under Rule 23(b)(3) requires a court to consider whether a class action is superior to other methods of adjudication. The court should consider, *inter alia,* "the interest of the members of the class in individually controlling the prosecution or defense of separate actions" and "the difficulties likely to be encountered in the management of a class action." Fed.R.Civ.P. 23(b)(3).

## IV. DISCUSSION

### A. Rule 23(b)(2)

 Although plaintiffs request certification of their ERISA and state statutory wage

claims under Rule 23(b)(2), these claims seek money damages for the most part.[5] Accordingly, certification under Rule 23(b)(2) would be inappropriate. *See Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 88 (S.D.N.Y.2001) (citing *Eisen v. Carlisle & Jacquelin,* 391 F.2d 555, 564 (2d Cir.1968), *vacated on other grounds,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974)) ("Subsection (b)(2) was never intended to cover cases . . . where the primary claim is for damages, but is only applicable where the relief sought is exclusively or predominantly injunctive or declaratory.").

### B. Rule 23(b)(3)

#### 1. The ERISA Claims

 Plaintiffs argue that their ERISA claims satisfy the commonality requirement and cite several cases in support of that proposition. *See* Pl. Mem. at 10. While this may be true, plaintiffs have ignored the numerosity requirement. Plaintiffs' counsel states that he "personally communicated with over 50 former employees of defendants who claim they have not been paid." Squitieri Aff. ¶ 10. There is no mention, however, of how many of those former employees have a viable ERISA claim. In fact, according to defendants, documents already produced in discovery reveal that "the vast majority of Silverline USA employees either did not participate in the 401k plan or are not owed any plan contributions." Answering Defendants' Memorandum of Law in Opposition to Plain-

tiffs' Motion for Class Certification ("Def. Mem.") at 7. The absence of an identifiable number of proposed class members having ERISA claims similar to those of plaintiffs is fatal to class certification of those claims.

#### 2. The FLSA Claim

 The consent procedures of the FLSA provide for one or more employees to pursue an action in a representative capacity for "other employees similarly situated." 29 U.S.C. § 216(b).[6] This type of "collective action" allows similarly situated potential class members to opt-in to the case. *See id.* Because certification is unnecessary, the requirements of Rule 23 do not apply and no showing of numerosity, commonality, typicality and adequacy of representation need be made. *See Ansoumana,* 201 F.R.D. at 84; *Foster v. The Food Emporium,* No. 99 Civ. 3860, 2000 WL 1737858, at *1 (S.D.N.Y. Apr.26, 2000). Rather, there is only one threshold requirement and that is whether the named plaintiffs are sufficiently "similarly situated" to the opt-in plaintiffs such that the case may proceed as a collective action. *See Morisky v. Public Serv. Elec. and Gas Co.,* 111 F.Supp.2d 493, 496 (D.N.J.2000). "Plaintiffs bear the burden of showing that they are similarly situated to the remainder of the proposed class." *Id.*

 The FLSA governs the payment of a minimum wage and overtime compensation. *See* 29 U.S.C. §§ 206 and 207.[7] Plaintiffs

---

**5.** The only equitable relief plaintiffs seek is the "permanent removal of the defendants from any positions of trust with respect to the Plan and the appointment of independent fiduciaries to administer the Plan." Cmplt., WHEREFORE Clause ¶ D. This request is largely a non-issue given the bankruptcy petitions filed by SeraNova and Silverline USA. Plaintiffs also seek a declaration that defendants have breached their ERISA fiduciary duties and have violated the FLSA and Labor Law. *See id.* ¶¶ B, F. Such declaratory relief is incidental to plaintiffs' primary request for money damages and will be subsumed if such damages are awarded.

**6.** The statute states, in relevant part, as follows:

> An action to recover . . . [damages] . . . may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves *and other employees sim-*

*ilarly situated.* No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b) (emphasis added).

**7.** With regard to a minimum wage, the FLSA states:

> Every employer shall pay to each of [its] employees . . . wages at the following rates:
> (1) except as otherwise provided in this section . . . not less than $5.15 an hour beginning September 1, 1997. . . .

29 U.S.C. § 206(a)(1).

The FLSA provides as follows with regard to overtime compensation:

> Except as otherwise provided in this section, no employer shall employ any of [its] employees . . . for a workweek longer than forty hours unless such employee receives compensation

were employed as computer professionals, *see* Sherikar Decl. ¶¶ 4 and 6, and were therefore exempt from these minimum wage and maximum hour requirements. *See* 29 U.S.C. § 213(a)(17) (exempting from FLSA coverage "any employee who is a computer systems analyst, computer programmer, software engineer, or other similarly skilled worker"). Having no FLSA claims of their own,[8] plaintiffs are not similarly situated to those non-exempt employees, if any, who potentially have such claims. Accordingly, because plaintiffs cannot bring a collective action under the FLSA, their Second Claim for Relief is hereby dismissed *sua sponte*.

### 3. The State Statutory and Common Law Claims

▆▆▆▆ Whether plaintiffs' statutory wage claims under the NJWPL and state common law claims are amenable to class certification depends on satisfaction of the commonality and typicality requirements of Rule 23(a). "The commonality and typicality requirements tend to merge into one another, so that similar considerations animate analysis of Rules 23(a)(2) and (3)." *Marisol A.*, 126 F.3d at 376. Commonality is met if plaintiff's grievances share a common question of law or of fact. *See id.* Typicality, by contrast, "is satisfied when each class member's claim arises from the same course of events, *and each class member makes similar legal arguments to prove the defendant's liability.*" *In re Drexel Burnham Lambert*, 960 F.2d 285, 290 (2d Cir.1992).

Plaintiffs argue that the common thread running through their claims and the claims of the proposed class members is defendants' failure to pay compensation. Commonality might be met if the issue of fact found to be in common is painted with such a broad brush. *But see Lewis Tree*, 211 F.R.D. at 232 (quoting *Sprague v. General Motors Corp.*, 133 F.3d 388, 397 (6th Cir.1998) (en banc) ("It is not every common question that

will suffice, however; at a sufficiently abstract level of generalization, almost any set of claims can be said to display commonality.")). Even if commonality is met, typicality requires that each class member share similar legal arguments in proving liability. Plaintiffs have failed to carry their burden in this regard.

Plaintiffs conclusively state that the NJWPL applies to the claims of all former employees regardless of where those employees worked. *See* Plaintiffs' Reply Memorandum in Support of Plaintiffs' Motion for Class Certification at 10 ("The applicability of the New Jersey Wage Law to all class members will provide complete relief to all class members and therefore, resort to plaintiffs' alternative causes of action in contract, quantum meruit and unjust enrichment may be unnecessary."). This conclusion is premised on the fact that the corporate defendants are all headquartered in New Jersey and the assumption that New Jersey has a sufficient interest to extend its wage law beyond its borders to employees who neither lived nor worked in New Jersey.

▆▆▆▆ Case law addressing the extraterritorial reach of a state's wage law is sparse indeed. The only case specifically addressing the reach of the New Jersey statute, *Mulford v. Computer Leasing, Inc.*, 334 N.J.Super. 385, 759 A.2d 887 (1999), does not support an expansive interpretation of the statute. In *Mulford*, the court concluded

> that the New Jersey statute [NJWPL] also applies to CLI, a New York corporation, doing business in New Jersey, *where the employees ... are based in, and work out of New Jersey.* They are also residents of this state. These circumstances, and the strong public and statutory policy of this state in favor of protecting payment of employees' duly earned compensation, dictate the application of New Jersey law as

for [her] employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which [s]he is employed.
29 U.S.C. § 207(a)(1).

**8.** Although plaintiffs claim that defendants' failure to make, keep and preserve records for each

of their employees violates the FLSA, *see* Cmplt. ¶ 51, there is no private right of action for the failure to keep required employment records. *See Marchak v. Observer Publications, Inc.*, 493 F.Supp. 278, 281 (D.R.I.1980) ("The language of § 216(b) clearly limits private actions to recovery of unpaid minimum wages, unpaid overtime compensation, and violations of § 215(a)(3).").

to this issue. New Jersey has the paramount interest in enforcing its law in this case.

*Id.* at 393, 759 A.2d 887 (emphasis added). Of course, New Jersey may also have an interest in policing those corporations headquartered within its borders and ensuring that such corporations compensate their employees, no matter where the employees live or work. But it is the legislative purpose that is most important in determining a statute's scope. And the purpose of the NJWPL is primarily to protect employees. *See id.* at 394, 759 A.2d 887 ("Employees are the obvious special beneficiaries of the statute.") (quoted in *Winslow v. Corporate Express, Inc.,* 364 N.J.Super. 128, 834 A.2d 1037 (2003)).

Because the reach of the NJWPL has not been adequately addressed, reference to cases analyzing the wage laws of other states is in order. For example, Pennsylvania's Wage Payment and Collection Law ("WPCL") is very similar to the NJWPL.[9] Compare N.J. Stat. Ann. § 34:11–4.2 ("[E]very employer shall pay the full amount of wages due to [its] employees at least twice during each calendar month, on regular pay days designated in advance by the employer, in lawful money of the United States or with checks on banks ....") *with* Pa. Stat. Ann. § 260.3 ("Every employer shall pay all wages ... due to [its] employees on regular paydays designated in advance by the employer.... The wages shall be paid in lawful money of the United States or check....").

In interpreting the WPCL consistent with its legislative purpose, one federal district court stated:

The plaintiffs argue that the WPCL was enacted to regulate the conduct of those who employ persons within Pennsylvania. But the language of the cases reflects the clear consensus that Pennsylvania's legislature enacted the WPCL primarily to protect employees. The legislature has a strong interest in enacting legislation to protect those who work in the Common-

wealth, but has almost no interest in extending that protection to those who work outside Pennsylvania. And while the statute assuredly has the effect of deterring wrongful behavior on the part of employers, its primary aim is to ensure that those who are employed in Pennsylvania receive compensation for their work. This conclusion is buttressed by the fact that the plaintiffs have not pointed to a single case, and our research has not uncovered one, in which an out-of-state employee has brought a WPCL claim in a Pennsylvania court. Thus, *we hold that the protections contained in the WPCL extend only to those employees based in Pennsylvania.*

*Killian v. McCulloch,* 873 F.Supp. 938, 942 (E.D.Pa.1995) (emphasis added), *aff'd mem. sub nom., Stadler v. McCulloch,* 82 F.3d 406 (3d Cir.1996).

*Killian* has since been re-affirmed, distinguished and rejected. In *Tucci v. CP Kelco,* No. CIV.A. 02–1765, 2002 WL 31261054, at *3 (E.D.Pa.2002), the court relied on *Killian* and refused to extend the reach of the WPCL to protect a Pennsylvania resident who worked in Delaware for a Delaware company under an employment contract with a Delaware choice of law clause. The rationale of *Killian* was also applied in *Glass v. Kemper Corp.,* 920 F.Supp. 928 (N.D.Ill. 1996). In *Glass,* an employee who neither worked nor resided in Illinois relied on the Illinois Wage Payment and Collection Act to recover unpaid wages from defendants, all of whom were Illinois corporations. *See id.* at 929–30. The court dismissed plaintiff's wage claim. *See id.* at 934. In doing so, the court noted that, like the WPCL, the Illinois Wage Act is intended to protect employees. *See id.* at 933. The court further stated:

It is clear that the purpose of the Wage Act is to offer protection to employees to whom wages are owed. While Illinois certainly has a strong interest in protecting Illinois employees, the citizens who work and live within the state, it has little inter-

---

**9.** One difference between the two statutes is that the WPCL does not provide a definition of employee. The NJWPL defines the term "employee" as "any person suffered or permitted to work by an employer...." N.J. St. Ann. § 34:11–4.1.

The term "employer" is defined as any corporation, *etc.,* "employing any person in this State." *Id.* The interplay of these two definitions fails to explain where an employee must reside or work in order to invoke the New Jersey statute.

est in extending that protection to those who work outside of Illinois. As the *Killian* court noted, this conclusion is buttressed by the fact that the parties have not cited, and this court has not found, any cases involving an out-of-state employee seeking protection under the Wage Act.

\* \* \* \* \* \*

The court finds that the language of the Wage Act and analogy to Indiana's and Pennsylvania's wage laws dictate that the Wage Act does not apply to employees neither living nor working in Illinois.

*Id.* at 933–34.

*Synesiou v. DesignToMarket, Inc.,* No. 01–5358, 2002 WL 501494 (E.D.Pa. Apr.3, 2002), distinguished *Killian* within the context of a choice of law provision. In *Synesiou,* a California resident sued a Pennsylvania corporation under the WPCL. *See id.* at *1. The employment agreement contained a Pennsylvania choice of law provision requiring plaintiff's statutory unpaid wages claim to be brought under the WPCL. *See id.* at *3. If plaintiff were not allowed to sue under the WPCL he would effectively be out of court given the choice of law provision. *See id.* It was on this basis that the court denied defendants' motion to dismiss plaintiff's unpaid wage claim.[10] *See id.*

What is evident is that it is far from clear that the New Jersey statute applies to all of the wage claims of the proposed class members. This is especially true given plaintiffs' allegation of alter ego liability and the bankruptcy filings of the two employer-defendants. Thus, whether analyzed in terms of commonality, typicality or predominance, the cohesiveness between plaintiffs and class members needed to justify class certification is glaringly absent. *See Lewis Tree,* 211 F.R.D. at 236 ("Courts have refused to certify nationwide class actions where the substantive law of multiple states must be applied.").

10. The court considered *Killian* but noted that a Pennsylvania state court subsequently rejected *Killian's* holding and allowed a nonresident employee to maintain a WPCL claim where the employment agreement required the use of Pennsylvania law and made Pennsylvania the exclusive forum for employer-employee disputes. *See id.* at *2 (citing *Crites v. Hoogovens Tech. Servs.,*

## V. CONCLUSION

For the reasons stated above, plaintiffs' request for class certification is denied in its entirety. The Clerk of the Court is directed to close this motion. A conference is scheduled for December 11, 2003, at 3:00 p.m.

*Inc.,* 43 Pa.D. & C. 4th 449 (Pa.Com.Pl.2000)). There is no mention here of any employment agreement containing a New Jersey choice of law provision. Thus, the factor that distinguished *Killian* in *Synesiou* does nothing here to support the extraterritorial application of the New Jersey wage law.