Denise CASSESE f/k/a Denise Caligiuri, George Scott Rush, Richard Melichar and Richard Schroer, individually and on behalf of all others similarly situated, Plaintiffs,

v.

WASHINGTON MUTUAL, INC., Washington Mutual Bank, FA, Washington Mutual Bank, FSB, Washington Mutual Bank, and Washington Mutual Home Loans, Inc., Defendants.

No. 05 CV 2724(ADS)(ARL).

United States District Court, E.D. New York.

Dec. 29, 2008.

Whalen & Tusa, P.C. by Joseph S. Tusa, Esq., Paul C. Whalen, Esq., of Counsel, New York, NY, Lowey Dannenberg Cohen & Hart, P.C. by Peter D. St. Philip, Jr., Esq., of Counsel, White Plains, NY, for the Plaintiffs.

Stroock, & Stroock & Lavan by Lisa M. Simonetti, Esq., Sarah B. Takasugi, Esq., of Counsel, Los Angeles, CA, for Defendants.

Stroock, & Stroock & Lavan by Burton Lipshie, Esq., Claude Gabriel Szyfer, Esq., Heidi Balk, Esq., James Lawrence Bernard, Esq., of Counsel, New York, NY, for the Defendants and Presently Representing the Federal Deposit Insurance Corporation.

Baker Botts, LLP by Elysa M. Dishman, Esq., Samuel J. Waldon, Esq., David A. Super, Esq., of Counsel, Washington, DC, for the Federal Deposit Insurance Corporation.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This case arises out of claims by Denise Cassese, George Scott Rush, Richard Melichar, and Richard Schroer, individually and on behalf of all other similarly situated individuals (collectively, the "plaintiffs"), that Washington Mutual, Inc., Washington Mutual Bank, formerly known as Washington Mutual Bank, FA ("WMB"), Washington Mutual Bank, FSB, and Washington Mutual Home Loans, Inc. (collectively, the "defendants") imposed and collected unlawful fees, prepayment penalties, and finance charges from them in connection with their mortgage loans. The defendants state that the fees charged were for additional services, such as providing borrowers with payoff statements, either through the mail or via facsimile.

## I. BACKGROUND

WMB is a federally chartered savings association, engaged in the practice of mort-

gage banking, home loan lending, and loan servicing, in New York, New Jersey, North Carolina, and other states. Each plaintiff is an individual who entered into loan agreements originated and/or serviced by WMB. The plaintiffs allege that they entered into standard form mortgage agreements and notes that stated that they could make full or partial prepayments of the principal amount of their loans at any time without penalty.

Paragraph 5 of the Cassese Note, entitled "Borrower's Right to Prepay," states the following: "I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a 'prepayment.'... I may make a full prepayment or partial prepayments without paying any prepayment charge." The same language appears at paragraph 4 of the Rush note, under the title "Borrower's Right to Prepay." The plaintiffs allege that each of them signed similar "standard" agreements, with the same or similar language with regard to prepayment. Despite such language, the plaintiffs allege that they were improperly charged additional fees in violation of their loan agreements at the time that they sought to prepay their mortgages. Collectively, the Court refers to these fees as the "Disputed Charges." The plaintiffs paid the Disputed Charges without inquiry or protest.

## A. Proposed Representative Plaintiffs

### 1. Denise Cassese

Denise Cassese entered into a loan agreement with the defendants in August of 1998. Cassese alleges that she received two payoff statements, dated May 14, 2002 and June 7, 2002, which required her to pay a "Fax Fee" of $10; "Recording Fees" of $53; and a $10 fee for "Unpaid Late Charges and/or other fees."

### 2. George Scott Rush

George Scott Rush became a mortgagor of the defendants in March of 2000. Rush's payoff statement dated October 17, 2001, required that he pay a "Payoff Statement Fee" of $60 and a "Recording Fee" of $20.

### 3. Richard Schroer

On or about April 25, 2002, Richard Schroer obtained a residential loan and was advised that "Washington Mutual" would be responsible for the servicing of his loan. Schroer's payoff statement, dated September 17, 2003, required him to pay a "Payoff Statement Fee of $60."

## B. Procedural History

Plaintiffs Cassese and Rush commenced this action on June 6, 2005. On September 7, 2007, the Court ruled on defendants' motion to dismiss pursuant to FED.R.CIV.P. 12(b)(6) and motion to strike pursuant to FED. R.CIV.P. 12(f) and 8(a). The Court dismissed Counts I, II, III, and IV of the plaintiffs' second amended complaint, but denied the defendants' motion to strike certain allegations in the amended complaint.

Count I concerned the plaintiffs' allegations that the additional fees charged upon prepayment of their mortgage loans violated the federal Truth–in–Lending Act ("TILA") because the defendants failed to disclose the imposition of such fees at the inception of the loans. The Court found that the Disputed Charges paid by the named plaintiffs fell within TILA's $100 tolerance for accuracy. This tolerance provides that, in connection with certain types of credit transactions, "the disclosure of the finance charge and other disclosures affected by any finance charge— (1) shall be treated as being accurate for purposes of this subchapter if the amount disclosed as the finance charge—(A) does not vary from the actual finance charge by more than $100." 15 U.S.C. § 1605(f).

Further, the Court granted the defendants' motion to dismiss Count II of the plaintiffs' complaint, which alleged that the Disputed Charges violated the federal Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, et. seq. The Court determined that the fees imposed were not "kickbacks or referral fees that tend to increase unnecessarily the costs of certain settlement services" as prohibited by RESPA because the Disputed Charges were never assessed for settlement services. As these disputed fees were charged upon prepayment of the principal, not at the settlement or

closing of the plaintiffs' loans, they could not have been assessed for settlement services. Furthermore, the Court dismissed the plaintiffs' claims pursuant to section 2610 of RESPA, finding that no private right of action can be maintained for violation of that section.

Finally, the Court dismissed certain state law causes of action, finding that the state statutes in Counts III and IV of the complaint were preempted by the federal regulations implementing the Home Owner's Loan Act, 12 U.S.C. § 1461–70 ("HOLA"). Pursuant to the broad reach of HOLA, the Office of Thrift Supervision of the Treasury Department ("OTS") was invested with authority and enacted regulations with the stated purpose of "occup[ying] the entire field of lending regulation for federal savings associations." 12 C.F.R. § 560.2(a). Based upon the express preemption of the entire field, the Court found the state enactments relied upon in Counts III and IV of the complaint preempted.

With respect to Count III of the complaint, the plaintiffs alleged violations of New York Real Property Law § 274–a; New Jersey Statutes Annotated §§ 46:10B–2 and 46:10B–25(f); and North Carolina General Statutes § 45–36(h). The Court found that each statute directly regulated certain fees that mortgage lenders may charge borrowers in connection with prepayment of a mortgage. The Court found the statutes preempted as the federal regulations applied to "state laws purporting to impose requirements regarding . . . [l]oan-related fees, including without limitation, . . . prepayment penalties [and] servicing fees." 12 C.F.R. § 560.2(b)(5).

Count IV of the second amended complaint alleged violations of New York Real Property Actions and Proceedings Law § 1921; New Jersey Statutes Annotated §§ 46:18–5.1, 46:18–11.2, and 46:18–11.3; and North Carolina General Statutes § 45–36.3. These statutes impose obligations upon mortgagees upon satisfaction and cancellation of mortgages and provide for penalties in the event of noncompliance. The Court found that because each of the statutes "purport[ ] to regulate or otherwise affect" credit activities of federal savings associations, they are preempted under 12 C.F.R. § 560.2(a). Accordingly, the Court dismissed Counts III and IV of the second amended complaint.

Following dismissal of Counts I–IV, the counts remaining in the second amended complaint include: Count V, Violations of New York GBL § 349; Count VI, Violations of State Consumer Protection Laws; Count VII, Breach of Contract; Count VIII, Unjust Enrichment; and Count IX, Fraud.

On June 27, 2008, the Court denied the plaintiffs' motion for reconsideration. In addition, the Court clarified that although the Count I TILA claims were dismissed with prejudice as to the named plaintiffs because each failed to establish fees in excess of $100. Also, potential TILA claims of the class members were dismissed without prejudice and could be raised at a later time. In addition, the Court denied the plaintiffs' motion for class certification because the named plaintiffs were no longer adequate representatives of the proposed class with respect to Count I. Therefore, the Court permitted the filing of a motion for intervention or joinder of an additional plaintiff, or plaintiffs, meeting the statutory requirement of a TILA claim within thirty days. No additional plaintiffs were joined. Instead, on July 28, 2008, the plaintiff renewed their motion for class certification pursuant to Fed.R.Civ.P. 23(a), (b)(2) and (b)(3), omitting potential class TILA claims for fees charged in excess of $100.

■ By letter dated October 1, 2008, counsel for the defendants advised that court as of September 25, 2008, the Office of Thrift Supervision, a federal agency possessing authority to regulate insured financial institutions, like WMB, appointed the Federal Deposit Insurance Corporation ("FDIC") as receiver for WMB for the purpose of liquidation. Title 12 of the United States Code governs Banks and Banking and the sections involved here implement a claims processing procedure for institutions brought under the receivership of the FDIC. See Matter of NNLC Corp., 136 B.R. 611, 613 (Bkrtcy. D.Conn.1992). "These sections, in general, indicate that persons having claims against failed depository institutions placed under

FDIC receivership should present their claims to the FDIC for allowance." *Id.*

On October 24, 2008, the FDIC, acting as receiver for WMB, filed a Notice of Substitution of Party, of the FDIC for WMB. On the same day, the FDIC moved for a mandatory 90 stay of this action pursuant to 12 U.S.C. § 1821(d)(12)(A)(ii). On October 30, 2008, following a Court ordered teleconference in this matter, the Court granted the FDIC's request for a mandatory stay. The parties agree that the mandatory stay ran from September 25, 2008 and expired on December 24, 2008.

On December 1, 2008, another defendant, Washington Mutual, Inc ("WMI"), filed a notice of automatic stay pursuant to a voluntary petition for bankruptcy protection under Chapter 11 of the United States Code filed in the United States Bankruptcy Court for the District of Delaware on September 26, 2008.

On December 22, 2008 the plaintiffs' counsel advised this Court by letter that FDIC had established December 30, 2008 as the bar date for the filing of claims against WMB for resolution by the FDIC claims process. The plaintiffs requested that the Court either resolve the class certification motion so that they could proceed to file claims either individually or on behalf of the class, as appropriate, or to extend the FDIC claims filing deadline. In addition, in light of the bankruptcy filing of WMI, the plaintiffs' counsel represented that the plaintiffs did not oppose a modification of their proposed class definition to exclude WMI until such time as the automatic bankruptcy stay expired.

By letter dated December 24, 2008, the FDIC as Receiver for WMB opposed plaintiffs' request, arguing that the Court was without authority to extend the claims bar date beyond December 30, 2008 because the claims process is committed to the exclusive power and discretion of the FDIC–Receiver. In addition, the FDIC contends that the Financial Institutions Reform Recovery and Enforcement Act of 1989, Pub.L. No. 101–73, 103 Stat. 183 (1989) prohibits class claims and, instead, requires that all parties submit individual claims against the failed institution. Further, The FDIC moved for an additional stay until the earlier of (i) September 14, 2009, or (ii) 180 days after the named plaintiffs submit their claims in the administrative claims process.

The defendants oppose the class motion arguing that WMI; Washington Mutual Bank FSB; Washington Mutual Home Loans, Inc.; and the former state-chartered Washington Mutual Bank are all improper defendants because the plaintiffs admittedly were only borrowers of WMB, and therefore the remaining defendants did not and could not assess the Disputed Charges to the plaintiffs. The Court now grants the plaintiffs' class certification motion as to WMB only, but makes no pronouncements about the form in which the claims of the class members should be submitted to the FDIC or whether the FDIC must accept those claims. In addition, the Court grants an additional stay of this action until February 2, 2009. The scheduled telephone conference will go forward on February 2, 2009 at 9am, at which time, the Court will consider an additional stay and the parties should be prepared to advise the Court of the status of this action against WMB as well as the remaining defendants.

## II. DISCUSSION

In determining whether a putative class qualified for certification, the only question is whether the requirements of Fed. R.Civ.P. 23 have been met. *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). Before a class may be certified, Federal Rule 23 requires that all of the factors listed in Rule 23(a) be satisfied and that the proposed action meet at least one of the categories of Rule 23(b). In addition, courts have added a requirement that the class be reasonably identifiable or ascertainable. *Dunnigan v. Metropolitan Life Ins. Co.,* 214 F.R.D. 125, 135 (S.D.N.Y.2003). In determining whether to certify a class, the Court assumes the existing allegations in the complaint to be true, and takes a liberal rather than a restrictive approach in determining whether the plaintiff satisfies these requirements. *See In re Visa Check/MasterMoney Antitrust Litig.,* 280 F.3d 124, 133 (2d Cir.2001); *Caridad v. Metro–North Commuter RR,* 191

F.3d 283, 291 (2d Cir.1999); *In re NASDAQ Market–Makers Antitrust Litig.*, 169 F.R.D. 493, 504 (S.D.N.Y.1996). While the Court must engage in a "rigorous analysis" to establish whether the plaintiffs have met their burden of proof as to certification, *Caridad*, 191 F.3d at 291, such a determination must not evolve into a "preliminary inquiry into the merits." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974).

In this case, the plaintiffs seek certification of the following class:

> All consumers or borrowers in the United States and its territories who has a mortgage, deed of trust, home loan, cooperative loan, home equity loan or line of credit secured by a residence, which loan was serviced by any of the Defendants and who paid prohibited fees, charges and/or penalties (often but not always termed "Fax Fees," "Payoff Statement Fees," "Recording Fees," or "UCC–3 Fees" by Defendants in Payoff Statements) in connection with requests for payoff statements or payoff amounts or the prepayment, repayment, discharge, satisfaction or settlement of loans secured by a residence.

Federal Rule 23(a) provides that a class action may be maintained only if:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

In addition, the plaintiffs contend that certification pursuant to Rule 23(b)(2) and (3) is appropriate. Rule 23(b)(2) permits certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Rule 23(b)(3) allows for class certification where "the court finds that questions of law or fact common to the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for . . . adjudicating a controversy."

■ Here, the plaintiffs argue that hundreds of thousands of consumers paid the Disputed Charges and the defendants do not contest the satisfaction of the numerosity requirement. The Second Circuit has determined that numerosity may be presumed with as few as forty potential class members. *See Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir.1995). Accordingly, the numerosity requirement is satisfied.

■ Also, the Court finds that the remaining claims present common questions of law sufficient to satisfy the commonality requirement. This requirement demands a showing that common issues of fact or law exist and that they affect all class members. Individual circumstances of the class members may differ without precluding class certification if "common questions are at the core of the cause of action alleged." *Vengurlekar v. Silverline Tech., Ltd.*, 220 F.R.D. 222, 227 (S.D.N.Y.2003) (internal quotations and citations omitted). Regardless of the distinctions in amounts paid, or even the nomenclature used to describe the Disputed Charges, common questions of law exist, for example, as to whether these fees violated WMB's contractual obligations to mortgage borrowers, as well as its obligations pursuant to GBL § 349 and other state consumer protection laws.

■ Further, the typicality requirement, closely related to the commonality requirement, is satisfied when "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability . . . . When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying the individual claims." *Robidoux v. Celani*, 987 F.2d 931, 936–37 (2d Cir.1993) (citations omitted). The typicality requirement is meant to en-

sure that the class representative is not subject to a unique defense which could potentially become the focus of the litigation. *Vengurlekar,* 220 F.R.D. at 227. Here, the issue at the core of this action, the legality of fees charged by WMB for repayment of home mortgage loans, are typical among both the group of named plaintiffs and the proposed class. Variations among the mortgage agreements at issue do not destroy typicality as to the class. *DeBoer v. Mellon Mortg. Co.,* 64 F.3d 1171, 1174 (8th Cir.1995) (finding typicality unaffected by differing mortgage instruments where the relief sought was the same throughout the class). Accordingly, the plaintiffs have met their burden of showing commonality and typicality of the claims of the proposed class.

 Fed.R.Civ.P. 23(a)(4) requires adequacy of representation, so that "the representative parties will fairly and adequately protect the interests of the class." In determining if a proposed representative will adequately serve the interests of the class, courts examine whether: "(1) plaintiff's interests are antagonistic to the interests of other members of the class; and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 222 F.3d 52, 60 (2d Cir.2000). There is no indication in the present record that any of the proposed class representatives maintain interests that are inconsistent with the claims of the proposed class. Further, proposed class counsel are apparently experienced attorneys and firms in this area of law, who have manifested a willingness to devote necessary resources to litigate vigorously on behalf of the entire class.

In addition to satisfying the four prerequisites established in Rule 23(a), the plaintiff must prove that the putative class is maintainable under at least one of the categories of Rule 23(b). Here, the plaintiffs seeks certification under Rule 23(b)(2) and (3). "[T]he Second Circuit has held it appropriate to simultaneously certify a class under Fed. R.Civ.P. 23(b)(2) and (b)(3)." *McAnaney v. Astoria Financial Corp.,* No. 04-CV-1101, 2006 WL 2689621, at \*5 (E.D.N.Y. Sept. 19, 2006)

 Actions for injunctive relief will satisfy the requirements of Rule 23(b)(2) if the injunctive relief sought will benefit the entire class. *See Nicholson v. Williams,* 205 F.R.D. 92, 99 (E.D.N.Y.2001). "[W]hen making an ad hoc determination, a district court 'should, at a minimum, satisfy itself of the following: (1) even in the absence of a possible monetary recovery, reasonable plaintiffs would bring the suit to obtain the injunctive or declaratory relief sought; and (2) the injunctive or declaratory relief sought would be both reasonably necessary and appropriate were the plaintiffs to succeed on the merits. Insignificant or sham requests for injunctive relief should not provide cover for (b)(2) certification of claims that are brought essentially for monetary recovery.'" *Parker v. Time Warner Entertainment Co., L.P.,* 331 F.3d 13, 20 (2d Cir.2003) (quoting *Robinson v. Metro-North Commuter R.R.,* 267 F.3d 147, 164 (2d Cir.2001)).

 In *McAnaney,* 2006 WL 2689621, the court granted certification pursuant to Rule 23(b)(2) under similar circumstances where the plaintiffs sought "injunctive, equitable, and declaratory relief directing defendants to cease their alleged practice of collecting undisclosed and unlawful fees." *Id.* at \*5. This was so, even where, as here, the proposed class includes parties who have already paid the Disputed Charges. Accordingly, the Court finds certification pursuant to Rule 23(b)(2) appropriate.

 With respect to 23(b)(3), "[t]he predominance inquiry should focus on the liability issue— 'if the liability issue is common to the class, common questions are held to predominate over individual questions.'" *In re Nigeria Charter Flights Contract Litigation,* 233 F.R.D. 297, 304 (E.D.N.Y.2006) (quoting *Dura-Bilt Corp. v. Chase Manhattan Corp.,* 89 F.R.D. 87, 93 (S.D.N.Y.1981)). Here, the common questions regarding legality of the fees assessed clearly predominate over any individual questions. In addition, the Court finds that the variations present in state common laws of contracts, unjust enrichment, and fraud, as well as potential variations among state consumer protection statutes do not preclude certification. "[E]ven if

a substantial variation in applicable state laws were to arise, 'the Court may employ subclasses or decertify those state law subclasses whose adjudication becomes unmanageable.'" *Id.* at 305–06 (internal quotations and citations omitted). Further, the Court finds that the class action in this context is superior to other methods of adjudication.

## III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED,** that the plaintiffs motion to certify a class is granted as against defendant WMB only and the Court certifies the following class under Fed.R.Civ.P. 23(b)(2) and 23(b)(3):

> All consumers or borrowers in the United States and its territories who had a mortgage, deed of trust, home loan, cooperative loan, home equity loan or line of credit secured by a residence, which loan was serviced by Washington Mutual Bank, formerly known as Washington Mutual Bank, FA and who paid or will be demanded to pay prohibited fees, charges and/or penalties (often but not always termed "Fax Fees," "Payoff Statement Fees," "Recording Fees," or "UCC–3 Fees" by Washington Mutual Bank, formerly known as Washington Mutual Bank, FA in Payoff Statements) in connection with requests for payoff statements or payoff amounts or the prepayment, repayment, discharge, satisfaction or settlement of loans secured by a residence.

Excluded from the Class is Washington Mutual Bank, formerly known as Washington Mutual Bank, FA, its parents, subsidiaries, officers, directors, employees, partners, and co-venturers. The Court approves Denise Cassese f/k/a Denise Caligiuri, George Scott Rush, and Richard Schroer as class representatives. The Court further approves Whalen & Tusa, P.C., and Lowey Dannenberg Cohen & Hart P.C. as designated class counsel. It is further

**ORDERED,** that this action is otherwise stayed until February 2, 2009, and it is further

**ORDERED,** that the parties are directed to appear for an additional teleconference on

February 2, 2009 at 9am to advise the Court of the status of this action against WMB as well as the remaining defendants. Plaintiffs' counsel is directed to initiate the call into chambers.

**SO ORDERED.**