**Agi WEISS, Individually and as Executrix of the Estate of Pal Weiss, and as Assignee, Representative and/or Nominee of Certain La Suisse Policy holders, Plaintiffs,**

v.

**LA SUISSE, SOCIETE D'ASSURANCES SUR LA VIE, Defendant.**

**Isac Hirsch, Chana Deutsch, Chume Fulop, Faigy Brach, Isac Rosenberg, As Assignee, Aron Deutsch, As Assignee, and Solomon Kahan, As Assignee, and All others similarly situated, Plaintiffs,**

v.

**La Suisse, Societe D'Assurances Sur La Vie, Defendant.**

**No. 01 Civ. 1006(CM).**

United States District Court, S.D. New York.

March 3, 2005.

Richard M. Mahon, Richard M. Mahon, II, Drake, Sommers, Loeb, Tarshis & Catania, PLLC, Newburgh, NY, Rachell Sirota, Sirota & Sirota, New York City, for Plaintiffs.

Richard Niles Chassin, Becker, Glynn, Melamed & Muffly LLP, New York City, for Defendant.

## ORDER AND DECISION OF THE COURT GRANTING MOTION FOR CLASS CERTIFICATION IN PART AND DENYING MOTION OF CLASS CERTIFICATION IN PART

McMAHON, District Judge.

Plaintiffs have made a motion for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure. Defendant La Suisse, Societe D'Assurances Sur La Vie ("La Suisse") opposes the same. For the reasons stated below, the motion is granted in part and denied in part.

*Facts*

■ The district court must accept all of the allegations in the pleadings as true on a motion for class certification, and avoid conducting a preliminary inquiry into the merits. *See, e.g., Dunnigan v. Metropolitan Life Ins. Co.,* 214 F.R.D. 125, 133 (S.D.N.Y.2003). According to the Complaint,[1] the facts are as follows:

La Suisse is a life insurance company, organized and doing business in Switzerland, authorized to issue individual life insurance policies that are valid worldwide. Complaint

---

1. All citations in this decision to the Complaint are references to the March 7, 2003 Complaint filed in *Isac Hisrch, et al., on behalf of himself and all others similarly situated v. La Suisse,* 03 Civ. 1143. Because this case was transferred and consolidated with *Agi Weiss, Individually and as Executrix of the Estate of Pal Weiss v. La* *Suisse Societe d' Assurance sur la Vie,* 01 Civ. 1006(CM), there are two complaints on the record. However, all of the parties' memoranda on the certification issue refer to the *Hirsch* complaint, so this decision cites to that complaint as well.

("Cplt.") ¶¶ 11, 13, 14. Plaintiffs are members of New York Orthodox and Hassidic Jewish communities. Cplt. ¶ 15. From 1989 to 1994, defendant marketed and sold insurance policies in New York through its authorized representative in Monroe, NY. Cplt. ¶ 16. Plaintiffs bought certain insurance policies from Defendant's representative described as "mixed life" insurance policies which contained marriage event clauses. Cplt. ¶¶ 19, 20. These clauses provided for advance payment of benefits or "insured capital" in the event of marriage prior to the insurance termination dates stated in each policy. Cplt. ¶ 20. Approximately 7,000 of these "mixed life" policies were sold in the United States—mainly in the Hassidic communities of Kiryas Joel, Monsey, and Brooklyn, New York. Cplt. ¶ 21.

Each of the "mixed insurance" policies were issued on the life of a child and contained a marriage event clause that triggered full acceleration of the face amount of the policy prior to the maturity date. Cplt. ¶ 24. Most of these policies contained Final Maturity Dates of 15 or 16 years after the stated Beginning of Contract Date. Cplt. ¶ 23.

Under these "mixed life policies" benefits were payable in one of three ways: (1) in the event the insured survived to the "End of Contract" date, the face amount was due; (2) in the event the insured dies before the "End of Contract" date, the face amount of the policy was due; and (3) in the event the insured married before the "End of Contract" date, the face amount of the policy was due. Cplt. ¶ 25. The face amount of each policy is 50,000 Swiss Franks or 100,000 Swiss Franks. Cplt. ¶ 29.

Plaintiffs allege that defendant failed and refused to pay marriage-event benefits due under the policies; failed to confirm coverage under the policies; failed to acknowledge correspondence from policyholders, beneficiaries or assignees of interests under the policies; failed to reinstate policies in accordance with policy terms; wrongly and intentionally allowed policies to lapse without acceptance of duly-tendered premiums under the policy terms; failed and refused to honor loan requests in accordance with the terms and conditions of the policies; and failed to acknowledge proof of marriage supplied by policyholders, beneficiaries and/or assignees of interests under the policies. Cplt. ¶ 28.

Plaintiffs further allege that defendant violated 42 U.S.C. § 1981 by intentionally discriminating against plaintiffs and the class based upon their ethnic and racial identity. Cplt. ¶ 64.

*Prior History*

In early 2004, a jury trial was held in *Kalman Weiss v. La Suisse*, 97 Civ. 1352(CM)(MDF), (hereinafter "*La Suisse I*"), in which forty similarly situated plaintiffs sued La Suisse, asserting the same causes of action plaintiffs have asserted. Some of the individual plaintiffs prevailed on their contract claims, but defendants prevailed on all other claims, including the claim of racial/ethnic discrimination. (This Court had previously granted summary judgment on certain issues relating to the § 1981 claim, thereby narrowing the issues for trial.)

On June 7, 2001, plaintiffs moved in *La Suisse I*, pursuant to Fed. R. Civ. P. 15(a) for leave to file a Second Amended Class Action Complaint, which for the first time, purported to assert the claims in *La Suisse I* on behalf of a class. They also moved pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) for an order certifying and maintaining the action on behalf of "all United States residents who purchased mixed life insurance policies issued by Defendant La Suisse with marriage-event clauses between January 1, 1989 through June 30, 1994 (the 'Class Period') and were damaged thereby." *Weiss v. La Suisse*, 161 F.Supp.2d 305, 319 (S.D.N.Y. 2001). The motion for leave to file a second amended class action complaint was denied because it was untimely filed on what we all thought, after four-plus years of arduous litigation, was the eve of trial. After the trial was put off, due to the pendency of numerous complicated motions in limine, plaintiffs did not try anew to have *La Suisse I* certified as a class action. Instead, they filed this action (which I will call *La Suisse III*, for reasons that will soon become apparent), in 2003 in the United States District Court for the Eastern District of New York.

On February 8, 2001, a separate complaint was filed in this court, captioned *Agi Weiss, Individually and as Executrix of the Estate of Pal Weiss v. La Suisse Societe d' Assurance sur la Vie,* 01 Civ. 1006(CM) (It is, of course, *La Suisse II*). It alleged the same causes of action against La Suisse, but on behalf of a different plaintiff. No motion was ever made to consolidate *La Suisse I and II.*

*La Suisse III,* formerly pending before Judge Garaufis, was sent to Judge Irrizarry when she joined that court, and was thereafter transferred to this court. It was consolidated with *La Suisse II* by order of this court on January 7, 2005.

*Discussion*

Plaintiffs now ask the court to certify a class under Fed.R.Civ.P. 23(b)(3), to be defined as: "All United States citizens who purchased mixed life insurance policies issued by Defendant La Suisse Societe D'Assurances Sur La Vie with marriage-event clauses between January 1, 1989 and June 30, 1995 and were damaged thereby." *See* Notice of Motion for Rule 23 Class Certification at 2. Excluded from the proposed class are Defendant, any firm, trust, corporation or entity that is an affiliate of Defendant, the legal representatives, heirs, successors-in-interest or assigns of any such excluded person or entity and all persons named as plaintiffs in the action entitled *Kalman Weiss, As Assignee, et al. v. La Suisse, Societe D'Assurances Sur La Vie,* 97 Civ. 1352(CM).[2] *Id.*

*Standards*

The standards for determining a motion for class certification are well settled and require little discussion. For a court to certify a class under Rule 23(b)(3), it must conclude that the prerequisites to class action status as set forth in Rule 23(a) are met, as well as the standards specific to Rule 23(b)(3) classes. In brief, the court must conclude all of the following:

*Under Rule 23(a):*

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

*Under Rule 23(b):*

(1) the questions of law or fact common to the members of the class predominate over any questions affecting only individual members; and

(2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The following constitute my findings on these issues.

*Discussion*

I. *Numerosity*

As an initial matter, there is no question that the class is so numerous that joinder of all members is impracticable. Defendant does not dispute plaintiff's assertion, that approximately 7,000 "mixed life" insurance policies with marriage-event clauses were sold to United States citizens between 1989 and 1994. Therefore, numerosity as required by Rule 23(a)(1) is satisfied.

II. *Commonality, Typicality & Predominance: The Relevant Law*

█ The commonality requirement is satisfied if plaintiffs' complaints share a common question of law or fact. *See* Fed.R.Civ.P. 23(a)(2). It is not necessary that all of the questions raised by arguments are identical; it is sufficient if a single common issue is shared by the class. *Robinson v. Metro–North Commuter R.R. Co.,* 267 F.3d 147, 155 (2d Cir.2001); *Trief v. Dun & Bradstreet Corp.,* 144 F.R.D. 193, 198 (S.D.N.Y.1992); *Fox v. Cheminova, Inc.,* 213 F.R.D. 113, 126 (E.D.N.Y.2003). Or, as this court previously held, "Rule 23(a)(2) does not require the plaintiffs to demonstrate that the class members' claims are identical; rather, it demands that the disputed issue of law or fact 'occup[ies] essentially the same degree of centrality to the named plaintiffs' claim as to that of the other members of the proposed

2. *La Suisse I.*

class.'" *Dodge v. County of Orange*, 208 F.R.D. 79, 88 (S.D.N.Y.2002) (quoting *Krueger v. New York Tel. Co.*, 163 F.R.D. 433, 442 (S.D.N.Y.1995)).

■ The typicality requirement of Rule 23(a)(3) is satisfied "if the claims of the named plaintiffs arise from the same practice or course of conduct that gives rise to the claims of the proposed class members." *Marisol A. v. Giuliani*, 929 F.Supp. 662, 691 (S.D.N.Y.1996), *aff'd*, 126 F.3d 372 (2d Cir. 1997); *Robinson, supra*, 267 F.3d at 155.[3]

■ "In order to meet the predominance requirement of Rule 23(b)(3), a plaintiff must establish that the issues in the class action that are subject to generalized proof, thus applicable to the class as a whole, ... predominate over those issues that are subject only to individualized proof." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). The predominance requirement is similar, but "more stringent" and "far more demanding" than the commonality requirement of Rule 23(a). *Id.* at 609, 623, 117 S.Ct. 2231.

Adequacy of representation is not challenged here, nor could it be. Plaintiffs are represented by the same counsel who represented the plaintiffs in *La Suisse I*. By their performance in that case, they have already proved their professional adequacy to the court.

Applying these factors yields different results for the Section 1981 claim and the breach of contract claims. The former are susceptible of class treatment; the latter are not.

*(1) The § 1981 Claim*

■ Plaintiffs' § 1981 discrimination claim alleging that the defendant had a practice or pattern of discriminating against the "mixed life" insurance policyholders on the basis of their Jewish ethnicity, requires each plaintiff to make an identical factual and legal show-

ing. To establish a claim under section 1981, each plaintiff must allege that: (1) they are a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (here, the making and enforcing of a contract. *Mian v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 7 F.3d 1085, 1087 (2d Cir.1993)).

■ Basically, plaintiffs contend (and based on my intimate knowledge of the record in *La Suisse I*, I know exactly what they contend) that when it became apparent to management at La Suisse that the mixed life policies with marriage riders were about to become a financial disaster for La Suisse, the corporation's management determined not to honor the policies. Plaintiffs contend—and this is the essence of their claim—that this decision was made because the holders of the policies were Orthodox/Hassidic Jews, rather than because the policies were unprofitable. The corporate actions of La Suisse affected all class members (that is, all holders of these policies), and so the claim of ethno-religious discrimination is not only common and typical, but predominant. A class action represents a superior method of adjudicating plaintiffs' contention that the corporate decisions were the product of ethno-religious discrimination. Moreover, the corporate decisions challenged by plaintiffs as discriminatory—the policy decisions taken at the highest levels of the company in 1994 and 1995—do not give rise to any separate defenses as against individual members of the class, including statute of limitations. The corporate decisions were made when they were made, and the discrimination claim arose at that moment.

*(2) Breach of Contract*

Plaintiffs allege that La Suisse breached the insurance policies in a "variety of ways."

---

**3.** "The commonality and typicality requirements of Rule 23(a) tend to merge." *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). The crux of both requirements is to ensure that the maintenance of a class action is economical, and that the named plaintiffs' claims and the class claims are so inter-related that the interest of the class members will be fairly and adequately protected in their absence. *Pyke v. Cuomo*, 209 F.R.D. 33, 41 (N.D.N.Y.2002). Similar considerations animate the analysis of both the commonality and typicality factors. *See Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir.1997).

Cplt. ¶¶ 28, 55. The variety of ways are not specified, but they undoubtedly include the variety of breaches that were alleged in, and were the subject of proof at, the trial in *La Suisse I*. Whether this claim can be certified for class action status must be analyzed independently of the discrimination claim. I conclude that the breach of contract claim is not amenable to class certification.

■ To prove breach of contract, plaintiffs must prove that: (1) a contract existed between the parties; (2) plaintiffs have in all respects complied with their obligations; (3) defendant's alleged failure constitutes a failure to perform its obligations under the contract; and (4) plaintiffs have been damaged as a result of the defendant's actions. *See Guity v. Martinez*, 03 Civ. 6266(LAP), 2004 WL 1145832, at *5 (S.D.N.Y.2004) (citing *Startech, Inc. v. VSA Arts*, 126 F.Supp.2d 234, 236 (S.D.N.Y.2000)).

The commonality requirement is satisfied if plaintiffs' complaints share a common question of law or fact. There is at least one common/typical issue on all the breach of contract claims. Plaintiffs all held "mixed life" insurance policies with marriage riders. Moreover, there are common issues that each plaintiff must prove in order to succeed on the breach of contract claim. The terms of the policies were the same or virtually the same. And all of the policies are governed by the same law—which, as this Court has already held, is Swiss law.[4]

However, the other three prongs of a valid breach of contract claim do not necessarily raise common questions, especially of fact. For example, each class member must prove that he has in all respects complied with his obligations under the contract. Each class member must demonstrate the manner in which La Suisse allegedly failed to live up to its obligations—and I know from the trial of *La Suisse I* that different plaintiffs have different issues in this regard. Some allege one type of breach; some allege another. Finally, each class member must demonstrate that he has been damaged—and again, I know from the trial of *La Suisse I* (where some of the 40 individual plaintiffs prevailed on their breach of contract claims and some did not) that these issues are highly individuated. We heard individual proof on them for the plaintiffs in *La Suisse I*. I am not able to ignore the lessons learned from the trial of *La Suisse I* as I consider the appropriateness of class certification in *La Suisse II*.

Furthermore, commonality and typicality are not the end of the analysis. The common questions of law and fact must *predominate.* "In order to meet the predominance requirement of Rule 23(b)(3), a plaintiff must establish that the issues in the class action that are subject to generalized proof, thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." *Amchem*, 521 U.S. at 623, 117 S.Ct. 2231; *Visa Check*, 280 F.3d at 136. "The 23(b)(3) predominance requirement is 'more stringent' and 'far more demanding than' the commonality requirement of Rule 23(a)." *Maneely v. City of Newburgh*, 208 F.R.D. 69, 76 (S.D.N.Y.2002) (quoting *Amchem*, 521 U.S. at 609, 623–24, 117 S.Ct. 2231). Courts frequently have found that the requirement was not met where, notwithstanding the presence of common legal and factual issues that satisfy the commonality requirement, the resolution of individual claims for relief would require individualized inquiries. *Dunnigan v. Metropolitan Life Ins. Co.*, 214 F.R.D. 125, 138 (S.D.N.Y.2003) (citing *Augustin v. Jablonsky*, 99 Civ. 3126(DRH), 2001 WL 770839, at * 13 (E.D.N.Y.2001)) (finding individualized issues of proximate causation predominate despite plaintiffs; showing of commonality

---

4. Indeed, I have already interpreted the various terms of the policies that are in dispute, and I doubt that the meaning of any additional terms is disputed. I recognize that the proposed members of the plaintiff class are not collaterally estopped by my prior ruling on the choice of law issues (although La Suisse is). But the plaintiffs—who are represented by the same lawyers as the plaintiffs in *La Suisse I* and who are undoubtedly making the same arguments that were made in *La Suisse I*—should be under no illusion that my conclusions will differ here. After all, I considered the choice of law questions, not once, but twice, on motions in limine in *La Suisse I*, and a third time at trial. I have heard all the arguments and made up my mind as to them. The motion papers and expert affidavits were so voluminous that I cannot imagine these plaintiffs have any new choice-of-law arguments to raise.

under Rule 23(a)(2)); *Martin v. Shell Oil Co.,* 198 F.R.D. 580, 592–93 (D.Conn.2000) (finding individualized proof of breach, causation, and trespass predominates where commonality was not contested).

Because Rule 23(b)(3) requires that common issues predominate, courts deny certification where individualized issues of fact abound. *See, e.g., Moore v. PaineWebber, Inc.,* 306 F.3d 1247, 1255–56 (2d Cir.2002) (denying class certification because defendant's liability for fraud required individualized proof of statements made to class members and therefore individual issues predominated over issues common to the putative class). " 'The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.' " *Moore,* 306 F.3d at 1252 (quoting *Amchem,* 521 U.S. at 623, 117 S.Ct. 2231); *see also Visa Check,* 280 F.3d at 136.

■ Here, the common questions do not predominate. One common question, choice of law, has already been thoroughly litigated and so will not consume an inordinate amount of time, even without application of the doctrine of collateral estoppel against plaintiffs. But the rest of the issues raised by plaintiffs are factual, and on the facts, individualized issues are predominant. Because members of the proposed class allege that their insurance policies were breached in a "variety of ways," each type of breach would require a different factual showing. I am familiar, from the trial of *La Suisse I,* with the variety of ways in which policies were allegedly breached. They include, but are not limited to, the following: (1) failure to pay dividends/bonuses (Muller testimony ("Muller") at 491); (2). Failure to pay pro-rata refunds (Muller at 492–93); (3) cancellation of policies (Muller at 512–13); (4) failure to collect premiums (Muller at 514); and (5) failure to pay marriage benefits (Muller at 543). *See La Suisse I* (trial transcript). The individualized nature of those claims can best be illustrated by the fact that, in *La Suisse I,*

some of the individual plaintiffs won and some did not.

Analysis of the factual differences between the *Amchem* and *Visa Check* cases further illustrates why the breach of contract claim is not appropriate for class certification.

The Supreme Court in *Amchem,* considered the appropriateness of certifying of a class who sought to achieve global settlement of current and future asbestos-related claims.[5] *Amchem,* 521 U.S. at 597, 117 S.Ct. 2231. The class proposed for certification potentially encompassed hundreds of thousands, perhaps millions, of individuals who were, or some day might be, adversely affected by past exposure to asbestos products. *Id.* The complaint identified nine lead plaintiffs, designating them and members of their families as representatives of a class comprising all persons who had not filed an asbestos-related lawsuit against the named defendants, but who (1) had been exposed—occupationally or through the occupational exposure of a spouse or household member—to asbestos or products containing asbestos attributable to one of the defendants, or (2) whose spouse or family member had been so exposed. *Id.* at 602, 117 S.Ct. 2231

More than half of the named plaintiffs alleged that they or their family members had already suffered various physical injuries as a result of the exposure. The others alleged that they had not yet manifested any asbestos-related condition. The complaint delineated no subclasses; all named plaintiffs were designated as representatives of the class as a whole. *Id.* at 603, 117 S.Ct. 2231.

The Court agreed with the Third Circuit's findings that class members in this case were exposed to different asbestos-containing products, in different ways, over different periods, and for different amounts of time; some suffered no physical injury, others suffered disabling or deadly diseases. *Id.* at 609, 117 S.Ct. 2231 (citing *Georgine v. Am-*

---

**5.** Because *Amchem* considered a class that was seeking certification for settlement purposes only, the court did not have to inquire whether management problems would arise at trial, but the plaintiffs were still required to satisfy Rule

23's requirements. *Id.* at 619–22, 117 S.Ct. 2231. In essence, however, the bar was even lower in *Amchem* because the plaintiffs had fewer requirement to satisfy in order for their class to be certified.

*chem Products, Inc.*, 83 F.3d 610, 626, 628 (3rd Cir.1996)).

The Court held that although Rule 23(a)'s commonality requirement might be satisfied because the members of the class have all been exposed to asbestos products supplied by the defendants, the far more demanding predominance criterion was not met. *Amchem*, 521 U.S. at 623–24, 117 S.Ct. 2231. "Given the greater number of questions peculiar to the several categories of class members, and to individuals within each category, and the significance of those uncommon questions, any overarching dispute about the health consequences of asbestos exposure cannot satisfy the Rule 23(b)(3) predominance standard." *Id.* at 624, 117 S.Ct. 2231.

In *Visa Check*, the plaintiffs were a number of large and small merchants and three trade associations who brought an antitrust class action against defendants Visa and MasterCard, alleging that defendants created a tying arrangement in violation of the Sherman Antitrust Act by requiring stores that accept defendants' credit cards to accept their debit cards as well. The plaintiffs also alleged that defendants attempted and conspired to monopolize the debit card market— also in violation of the Sherman Act. *Visa Check*, 280 F.3d at 129–30.

Plaintiffs moved to certify a class pursuant to Rule 23 consisting of "all persons and business entities who have accepted Visa and/or MasterCard credit cards and therefore are required to accept Visa Check and/or MasterMoney debit cards under the challenged tying arrangements, during the fullest period permitted by the applicable statutes of limitations." *Id.* at 131.

The Second Circuit affirmed the district court's finding that plaintiffs could establish each of the three required elements of an antitrust claim—(1) a violation of antitrust law; (2) injury and causation; and (3) damages—using common evidence. *Id.* at 136 (citing *In re Visa Check/MasterMoney Antitrust Litig.*, 192 F.R.D. 68, 81–88 (E.D.N.Y. 2000)). Unlike in *Amchem*, where each individual class member would have to litigate liability issues based on the individualized facts of the person's asbestos exposure, all plaintiffs in *Visa Check* could establish liability through the same evidence.

The Second Circuit also accepted the district court's finding that injury-in-fact and causation could be determined on a classwide basis by relying on an expert report, which avoided the need to analyze every class member's claim individually. *Id.* at 136–38.

The Second Circuit further held that the fact that although a defense " 'may arise and may affect different class members differently [that] does not compel a finding that individual issues predominate over common ones.' " *Id.* (quoting *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 296 (1st Cir.2000)). The only defense that threatened to require individual consideration was that of mitigation of damages. *Id.* at 138.

The Court of Appeals held, however, that because "a sufficient constellation of common issues binds class members together" and all of the liability issues were appropriate for class certification, damages and any possible defenses related thereto could be dealt with separately and did not "foreclose class certification under Rule 23(b)(3)." *Id.*

The breach of contract claims by the plaintiffs against La Suisse are more closely analogous to claims of the *Amchem* plaintiffs, and are readily distinguishable from the *Visa Check* class claims.

Like the proposed class in *Amchem*, the plaintiffs in this class allegedly suffered injuries "in different ways, over different periods." *Amchem*, 521 U.S. at 609, 117 S.Ct. 2231. And, as in *Amchem*, while Rule 23(a)'s commonality requirement might be satisfied because the members of the class have all had their insurance policies breached by the same defendant, the far more demanding predominance criterion is not. *Amchem*, 521 U.S. at 623–24, 117 S.Ct. 2231. The various types of breach peculiar to the some class members, the requirement of individualized proof on the different types of breaches, their corresponding individualized defenses, and the significance of those uncommon questions, are not predominated by the fact that all plaintiff's have a common overarching complaint. *See id.* at 624, 117 S.Ct. 2231.

Each plaintiff will have to testify about what happened to him, and when. And La Suisse will have to rebut as to each individual plaintiff. Therefore, the proposed class does not satisfy the Rule 23(b)(3) predominance standard.

By comparison, the *Visa Check* plaintiffs were able to put forth common evidence to prove each element of their prima facie case, including their damages. Unlike, the plaintiff's in the case against La Suisse, the *Visa Check* plaintiffs did not allege that the defendants' liability occurred in a "variety of ways," different for different members of the class.

Furthermore, the individual defenses to be asserted against the *Visa Check* plaintiffs only affected the determination of damages; all liability defenses were common to all plaintiffs. By contrast, on the contract claims, La Suisse will assert different defenses for different plaintiffs. These defenses could include issues of non-compliance with contract provisions by various plaintiffs in various ways, and statute of limitations. Specifically, different plaintiffs' claims will be subject to different limitations periods (by way of contrast, the Section 1981 claim of each putative class member will be governed by the same statute of limitations, because the actions taken by La Suisse at the corporate level that allegedly had the effect of discriminating against the entire class were not individualized). The six year statute of limitations applicable to each plaintiff runs from the date his particular policy was breached, not from the date some allegedly discriminatory corporate policy was adopted. *See St. George Hotel Associates v. Shurkin,* 12 A.D.3d 359, 360, 786 N.Y.S.2d 56 (2d Dep't 2004) (citing *Ely–Cruikshank Co. v. Bank of Montreal,* 81 N.Y.2d 399, 402, 599 N.Y.S.2d 501, 615 N.E.2d 985 (1993); *National Life Ins. Co. v. Hall & Co. of N.Y.,* 67 N.Y.2d 1021, 503 N.Y.S.2d 318, 494 N.E.2d 449 (1986); *Mauro v. Niemann Agency,* 303 A.D.2d 468, 756 N.Y.S.2d 611 (2d Dep't 2003); *see also 20 Clarke Place Realty Corp. v. Rudges and Co., Inc.,* 267 A.D.2d 141, 700 N.Y.S.2d 23 (App. Div. 1st Dep't 1999)). Defendant is correct that, in order to consider its statute of limitations defenses, the court will have to take into account the timing of each plaintiff's transactions and interactions with La Suisse.

■ Although the existence of a meritorious defense does not necessarily defeat certification, affirmative defenses may be considered as a factor in the class certification calculus. *In re WorldCom, Inc. Securities Litigation,* 219 F.R.D. 267, 303–04 (S.D.N.Y. 2003) As was the case in *La Suisse I,* whether meritorious or not, there will be individualized questions concerning the statute of limitations allegations, and these will require the court to review the transactions of each plaintiff individually. These individual issues will also predominate any common issues shared by the parties.[6]

In sum, in view of *Amchem,* and based on my knowledge of the record in *La Suisse I,* I conclude that the breach of contract claims are not suitable for class certification.

*Subsequent Proceedings*

The Section 1981 claim is hereby severed from the breach of contract claim.

Plaintiffs will provide the court (in the person of Magistrate Judge Fox, to whom I am going to refer this), within 20 days, a method for providing notice to the class. Defendants will have 10 days thereafter to critique same. Judge Fox will thereafter be in charge of deciding on the method of notice to be used. The only constraint to be imposed by me is that notice be provided and

---

**6.** With respect to defendant's fraud defense and fraud counterclaim, defendant's concern is that it might be necessary to examine each plaintiff's relationship with their broker and their knowledge of the role of Bituswiss. Here defendant is wrong, because the doctrine of collateral estoppel will likely bar La Suisse from relitigating those issues. In *La Suisse I,* I dismissed the defendant's fraud defense and counterclaim based on the alleged misconduct of Bituswiss. If these allegations are identical to those raised in the previous action, as it appears to be from defendant's papers, defendant will not get a second bite at the apple. But because it will not be necessary to re-litigate these issues in the context of the individual cases, a class action is not a superior method of dealing with the issue. Any individual who chooses to bring a contract claim can assert the collateral estoppel bar from *La Suisse I* and it will be applied.

the opt-out period expire no later than July 1, 2005.

I hereby bifurcate the liability and damage phases of the class action portion of this case. There is no need for additional discovery on the Section 1981 claim. All discovery in *La Suisse I* is deemed to be discovery in this case. The discovery in *La Suisse I* was extraordinarily protracted and thorough, and the Section 1981 claim asserted in that case is identical to the Section 1981 claim asserted in this case. As far as I am concerned, discovery on the merits of the Section 1981 claim is closed. The merits of that claim will be resolved before discovery (if needed) commences on damages. Especially in view of the verdict in *La Suisse I,* it would subject defendant to an undue burden to commence damages discovery on the class claim before the merits of that claim are resolved.

For purposes of the statute of limitations: The date on which class claims were first asserted is the date when the Eastern District of New York action was filed, which is March 7, 2003. The date on which class claims were first attempted to be asserted (which may or may not be a relevant date for statute of limitations purposes) is the date on which plaintiffs moved in *La Suisse I* for leave to amend the complaint, which occurred on June 7, 2001. I note that the motion was denied on September 14, 2001, which may also be a relevant date. I specifically note that *La Suisse II* did not purport to be a class action, and so the filing of that case has no bearing on statute of limitations issues.

Defendant shall move for summary judgment on the issue of statute of limitations insofar as it related to the class claim by July 8, 2005. Plaintiffs shall respond by July 22, 2005. Defendant shall reply by July 31, 2005. I will decide this issue before anyone needs to deal with any merits-based motion for summary judgment. I will not brook any delay in these dates, for any reason. Counsel have plenty of lead time; they know the record, they can begin preparing their papers now.

If the class claim is not dismissed on statute of limitations grounds, defendant shall move for summary judgment on the class claim no later than 30 days following the date on which this court denies any motion for summary judgment on statute of limitations grounds—or, if no such motion is made, by July 31, 2005. Plaintiffs have 30 days to respond and defendant 10 days for reply. Again, that schedule is fixed in stone. Counsel not only have a lot of lead time, but they have a great deal of experience litigating this issue: I rather imagine they will be dusting off their old summary judgment papers and adding references from the trial transcript of *La Suisse I.*

The named plaintiffs in La Suisse II and La Suisse III may pursue their individual breach of contract claims under docket number 01 Civ. 1006 with an attached "A" (01 Civ 1006A). All future submissions relating to individual breach of contract claims should include the "A" in the caption. Magistrate Judge Fox will supervise that discovery, which is to be limited in view of the extensive discovery in *La Suisse I.* In fact, I would imagine that there is very little discovery to be had, aside from the depositions of the plaintiffs themselves and an examination of their individual files as maintained by La Suisse, but I leave that to the learned Magistrate Judge. Discovery on the breach of contract claims is to begin immediately and must be concluded by June 30, when the class notice period expires. Again, do not ask me for an extension, as none will be granted. The parties are free to consent to have Judge Fox handle the contract claims for all purposes, in which case he will set his own discovery deadlines.

Obviously, I encourage the parties to resolve this case. I have been advised in the past that *La Suisse II* was close to resolution. The time has come to conclude a settlement or take the matter to trial.

This constitutes the decision and order of the court.