[777 NYS2d 50]

D<small>AVID</small> S<small>OLOMON</small> et al., Respondents, v B<small>ELL</small> A<small>TLANTIC</small> C<small>ORPORA-</small> <small>TION,</small> Now Known as V<small>ERIZON</small> C<small>OMMUNICATIONS,</small> I<small>NC.,</small> et al., Appellants.

J<small>AMES</small> C<small>ROAK,</small> Respondent, v B<small>ELL</small> A<small>TLANTIC</small> C<small>ORPORATION,</small> Now Known as V<small>ERIZON</small> C<small>OMMUNICATIONS,</small> I<small>NC.,</small> et al., Appellants.

J<small>EROME</small> W<small>EISS</small> et al., Respondents, v V<small>ERIZON</small> C<small>OMMUNICATIONS</small> C<small>ORPORATION</small> et al., Appellants.

First Department, May 13, 2004

## APPEARANCES OF COUNSEL

*White & Case LLP (James M. McGuire* of counsel), *Davis Polk & Wardwell (Guy Miller Struve, Nancy B. Ludmerer* and *Edmund Polubinski, III,* of counsel), *Robert Ernst* and *Richard H. Wagner* for appellants.

*Abbey Gardy, LLP (Joshua N. Rubin* of counsel), *Giskan & Solotaroff (Jason L. Solotaroff* of counsel), *Law Offices of Mark S. Kaufman (Mark S. Kaufman* of counsel), *Morris & Morris LLC (Karen L. Morris* and *Patrick F. Morris* of counsel), and *William A. Thomas* for respondents.

## OPINION OF THE COURT

Ellerin, J.

The issue before us is whether class certification was proper in this action for damages for defendants' alleged violations of General Business Law §§ 349 and 350 in the marketing of their Digital Subscriber Line (DSL) Internet access service.

Plaintiffs in these three consolidated cases are consumers who subscribed to defendants' DSL service, which makes possible access to the Internet via telephone lines without disrupting telephone service. Defendants have provided DSL service in areas where they provide local telephone service since July 1999 and have marketed it in a wide variety of media, including their Web site. Until August 2000, DSL was described on the Web site as "FAST—High speed Internet access service up to 126x faster than your 56K modem," "DEDICATED—You're always connected—no dialing in and no busy signals, ever!," "CONVENIENT—Allows you to talk on the phone and use the Internet simultaneously—on the same line!," and "SIMPLE—Works on your existing phone line and our self-installation kit can be set up in minutes." Plaintiffs claim that these representations are false and/or misleading and that defendants are in violation of General Business Law §§ 349 and 350.

Plaintiffs assert that, contrary to defendants' representations, DSL does not offer speeds up to 126 times faster than a 56k

modem and that in fact "the practical speed of the service rarely, if ever, approaches the high speed of 126 x 56k"; that subscribers are not always connected but in fact "suffer frequent and regular interruptions"; and that the service is not simple and cannot be set up within minutes and that "[a] substantial number of purchasers are unable to use the self-installation kits." They also assert that, contrary to defendants' advertising, their technical support of DSL is "inadequate." Plaintiffs allege that they have been injured by "[paying] for and [being] charged for DSL Service that they are not receiving."

Plaintiffs moved for certification of a general class of all New York State residential consumers who ever subscribed to defendants' DSL service and two subclasses comprised of all subscribers who had complained to defendants about DSL self-installation and all subscribers who had complained about technical support service. The court granted the motion but redefined the general class as "all New York State residential DSL subscribers who experienced slower than advertised Internet download speeds, and who experienced connectivity outages."

We reverse and decertify the general class and its subclasses on the ground that plaintiffs failed to demonstrate that questions common to the class predominate over those affecting only individuals (CPLR 901 [a] [2]; *Chimenti v American Express Co.*, 97 AD2d 351, 352 [1983], *appeal dismissed* 61 NY2d 669 [1983]). In any event, plaintiffs represent in their brief that they no longer seek certification of the two subclasses; indeed, they abandoned that request in their reply memorandum on the motion.

The prerequisites to a class action are:

"1. the class is so numerous that joinder of all members, whether otherwise required or permitted, is impracticable;

"2. there are questions of law or fact common to the class which predominate over any questions affecting only individual members;

"3. the claims or defenses of the representative parties are typical of the claims or defenses of the class;

"4. the representative parties will fairly and adequately protect the interest of the class; and

"5. a class action is superior to other available

methods for the fair and efficient adjudication of the controversy" (CPLR 901 [a]).

It is not disputed that the first prerequisite has been met. Since there is no evidence that plaintiffs are adverse to the class or will not vigorously pursue the action, the fourth prerequisite has also been met (*see Super Glue Corp. v Avis Rent A Car Sys.*, 132 AD2d 604, 607 [1987]). As to the remaining prerequisites, we must examine the elements of a cause of action under General Business Law §§ 349 and 350, which declare deceptive acts and practices and false advertising, respectively, unlawful.

Claims under General Business Law §§ 349 and 350 are available to "an individual consumer who falls victim to misrepresentations made by a seller of consumer goods through false or misleading advertising" (*Small v Lorillard Tobacco Co.*, 94 NY2d 43, 55 [1999]; *see also Goshen v Mutual Life Ins. Co.*, 98 NY2d 314, 324 n 1 [2002]). To state such a claim, a plaintiff must allege that the defendant has engaged " 'in an act or practice that is deceptive or misleading in a material way and that plaintiff has been injured by reason thereof' " (*id.* at 324, quoting *Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank*, 85 NY2d 20, 25 [1995]). Deceptive or misleading representations or omissions are defined objectively as those "likely to mislead a reasonable consumer acting reasonably under the circumstances," i.e., the plaintiff's circumstances (*Oswego* at 26, 27 [summary judgment denied to defendant bank in absence of actual documentation furnished to plaintiff pension fund from which to determine whether a reasonable consumer would have been deceived by bank's conduct]).

A deceptive act or practice is not "the mere invention of a scheme or marketing strategy, but the actual misrepresentation or omission to a consumer" (*Goshen* at 325), by which the consumer is "caused actual, although not necessarily pecuniary, harm" (*Oswego* at 26). Thus, to prevail in a cause of action under General Business Law §§ 349 and 350, the plaintiff must prove that the defendant made misrepresentations or omissions that were likely to mislead a reasonable consumer in the plaintiff's circumstances, that the plaintiff was deceived by those misrepresentations or omissions and that as a result the plaintiff suffered injury (*Goshen* at 325).

In a class action alleging deceptive acts and practices and false advertising, the proof must show that each plaintiff was reasonably deceived by the defendant's misrepresentations or omissions and was injured by reason thereof. Therefore, certifi-

cation of a class for purposes of an action brought under General Business Law §§ 349 and 350 may be appropriate where the plaintiffs allege that all members of the class were exposed to the same misrepresentations (*see e.g. Broder v MBNA Corp.*, 281 AD2d 369, 371 [2001] ["identical written solicitations"]; *Taylor v American Bankers Ins. Group*, 267 AD2d 178, 178 [1999] [while presented in a variety of forms and promotions, solicitations "did not differ materially"]).

However, class certification is not appropriate where the "plaintiffs do not point to any specific advertisement or public pronouncement by the [defendants] . . . which was undoubtedly seen by all class members" (*Small v Lorillard Tobacco Co.*, 252 AD2d 1, 9 [1998], *affd* 94 NY2d 43 [1999]; *Gaidon v Guardian Life Ins. Co. of Am.*, 2 AD3d 130 [2003] ["the varied use of illustrations concerning the 'vanishing premium' concept and the extent to which a purchaser might have been influenced by such illustrations, would require individualized proof in the case of each class member, which would in turn raise questions that would overwhelm any issues common to the class"]; *Carnegie v H&R Block*, 269 AD2d 145, 147 [2000], *lv dismissed* 95 NY2d 844 [2000] ["questions of whether each individual was exposed to, and influenced by, the advertising would predominate"]).

Plaintiffs have not demonstrated that all members of the class saw the same advertisements. Indeed, the record shows that the individual plaintiffs did not all see the same advertisements; some saw no advertisements at all before deciding to become subscribers. Moreover, the content of defendants' DSL advertising varied widely and not all the advertisements contained the alleged misrepresentations. Thus, questions of individual members' exposure to the allegedly deceptive advertising predominate.

The motion court found that the variety of advertisements in different media using varying language presents no obstacle to class certification because "the various advertisements convey the same substantial message to the consuming public—speed and ease of DSL service." This conclusion overlooks the fact that plaintiffs had already abandoned their claim that defendants misrepresented the ease of DSL service. More importantly, it fails to address the uncontested fact that some subscribers saw none of these advertisements but learned of DSL through word of mouth. As to those subscribers who saw the advertisements, the court's conclusion fails to address plaintiffs' specific

allegation that DSL was not up to 126 times faster than a 56k modem. Plaintiffs have admitted that DSL service was "significantly faster than the dial-up modems they had previously used." A representation by defendants merely that DSL was "fast" therefore would have been true.

Even assuming that all the members of the class saw the same advertisements, questions as to whether each individual was reasonably misled by them predominate, given the alternative sources of information about DSL service that each may have had. One of the individual plaintiffs who learned about DSL service through word of mouth testified that he spoke to three or four people who were using the service and he heard both "good things" and "complaints" about it. Another testified that he read articles in computer magazines comparing DSL service to cable modem service. Other sources of information include the terms and conditions in the service agreement containing disclaimers "that address the very service glitches plaintiffs cite," and the 30-day trial period, during which subscribers could cancel with no obligation (*Scott v Bell Atl. Corp.*, 282 AD2d 180, 184 [2001], *mod* 98 NY2d 314 [2002]). Thus, individual trials would be required to determine whether a reasonable consumer acting reasonably in each plaintiff's circumstances would have been misled by defendants' representations.

As to proof of injury, individual trials would be required to determine which plaintiffs experienced either slower than advertised Internet download speeds or connectivity outages and the nature, cause and extent of those adverse experiences. It is uncontested, for example, that DSL speed is dependent on a number of factors, including the subscriber's own computer and network elements that are unrelated to the service itself, such as the server on which the Web site sought to be accessed resides (*see e.g. Hazelhurst v Brita Prods. Co.*, 295 AD2d 240 [2002] [class certification inappropriate where individual issues of injury exist]).

Individual trials also would be required to determine damages based on the extent of each plaintiff's injuries, i.e., the slowness of service and/or the frequency and duration of connectivity outages, if any. The determination of the degree to which an individual consumer's service was slow requires consideration of many factors, such as whether the consumer's speed was already limited by the Web site accessed or congestion on the Internet (*see Tegnazian v Consolidated Edison*, 189 Misc 2d 152,

155 [2000] ["the damages of each putative class member are not easily computable. It would require considerable inquiry regarding not only the amount, but whether the damage was caused by the blackout"], *appeal withdrawn* 283 AD2d 1034 [2001]).

Defendants also assert certain affirmative defenses that raise individual issues. One such defense is the voluntary payment doctrine, which bars recovery of payments voluntarily made "with full knowledge of the facts" (*Dillon v U-A Columbia Cablevision of Westchester*, 100 NY2d 525, 526 [2003]) and would bar recovery by any subscriber who, having experienced slow service and/or frequent connectivity outages, continued to use defendants' DSL service. One of the three individual plaintiffs who have continued to subscribe to the service despite their complaints testified that he believed that DSL service is presently worth more than he is paying for it.

A second affirmative defense is the fact that many subscribers, including five of the individual plaintiffs, have already received billing credits from defendants to compensate them for any down time they experienced (*see Sirica v Cellular Tel. Co.*, 231 AD2d 470, 471 [1996] [class certification properly denied because defendant's contractual liability, if any, was individual in nature, "especially in view of its credit policy"]). While the motion court suggested that plaintiffs could be reimbursed on a pro rata basis, we reject the argument for "a statistically based assessment of damages absent any certain quantification of actual losses of putative class members arising from defects in defendant's system" (*id.*).

Additional defenses are the terms and conditions and the 30-day trial period discussed above in connection with the various sources of information available to consumers apart from defendants' advertisements. While some of the individual plaintiffs testified that they accepted the terms and conditions after reading them, others testified that they accepted the terms and conditions without reading them, and one plaintiff testified that, although she did not remember reading the terms and conditions, she "must have agreed" to them. To determine actual injury, individual trials would be required to demonstrate which statements and/or disclaimers each plaintiff read and why he or she continued to receive the service even after the 30-day trial period.

As to the third prerequisite for class certification, the seven individual plaintiffs have not demonstrated that they are typical of the class. Indeed, they would appear to have demonstrated

that there is no typical plaintiff. The record reflects differences among the individual plaintiffs as to which advertisements they saw, whether they saw any ads or obtained information by which to evaluate DSL service from other sources, whether they received billing credits, whether they read the terms and conditions and agreed to them, the nature and extent of their injuries, and the damages they claim.

Finally, as to the fifth prerequisite, plaintiffs have not shown that a class action is superior to other available methods for the fair and efficient adjudication of this controversy. Given the size of the class—approximately 200,000 according to plaintiffs' definition, although an unknown number as certified by the court—the necessity of conducting the above-discussed individual inquiries would render the litigation "extremely difficult if not impossible to manage, and an inefficacious means of adjudicating any underlying common issue" (see Gordon v Ford Motor Co., 260 AD2d 164, 165 [1999]).

Accordingly, the order of the Supreme Court, New York County (Herman Cahn, J.), entered October 29, 2003, which granted plaintiffs' motion for class certification and for class representative and class counsel designation, should be reversed, on the law, without costs, the motion denied and the class and subclasses decertified.

ANDRIAS, J.P., WILLIAMS and GONZALEZ, JJ., concur.

Order, Supreme Court, New York County, entered October 29, 2003, reversed, on the law, without costs, plaintiffs' motion for class certification and for class representative and class counsel designation denied and the class and subclasses decertified.