**Richard VACCARIELLO, on behalf of himself and all others similarly situated, Plaintiffs,**

v.

**XM SATELLITE RADIO, INC., Defendant.**

**No. 08 Civ. 5336(RO).**

United States District Court, S.D. New York.

June 13, 2013.

Lester L. Levy, Sr., Natalie Marie MacKiel, Michele Fried Raphael, Wolf Popper LLP, New York City, for Plaintiffs.

Anthony Joseph Dreyer, Jordan Adam Feirman, Kenneth Alan Plevan, Skadden, Arps, Slate, Meagher & Flom LLP, New York City, for Defendant.

## ORDER

OWEN, District Judge:

Plaintiff Richard Vaccariello ("Plaintiff") brings this action against Defendant XM Satellite Radio, Inc. ("Defendant") under New York General Business Law § 349 ("GBL § 349") and New York General Obligations Law § 5–903 ("GOL § 5–903"). Plaintiff asserts that Defendant, through its practice of automatically renewing customers' subscriptions, violated GBL § 349 and was unjustly enriched, and also seeks injunctive relief mandating Defendant comply with GOL § 5–903's notice provisions. Plaintiff seeks to certify a class under Federal Rule of Civil Procedure 23, consisting of "all residents of

the State of New York who subscribed to XM Satellite radio service and have had their service plan automatically renewed at any time since June 11, 2005."

Magistrate Judge George Yanthis issued a Report and Recommendation (the "Report") in which he recommended that Plaintiff's motion for class certification be denied. For the reasons that follow, this Court concurs with the Report and hereby adopts it as the Order of this Court. Accordingly, Plaintiff's motion is DENIED.

## BACKGROUND

The factual background is provided in further detail in the Report and Recommendation. Defendant XM provides subscription based satellite radio service through XM compatible automobiles, radios, and the internet. XM automatically renews the customer's service for an identical term upon expiration of a subscription.

Plaintiff purchased a one-year XM subscription in April 2004 at the end of a three-month trial period following his leasing of a vehicle with a pre-installed XM radio. Approximately a year later, Plaintiff purchased a three-year subscription by telephone, and at around the same time, activated an XM online account allowing him to listen to satellite radio over the internet. In the process of activating this account online, Plaintiff checked a box indicating that he had read and that he accepted XM's terms and conditions of service, which included, among other things, that "the term of this Agreement is indefinite and Services will continue until canceled."

Plaintiff's subscription was renewed and Plaintiff thereafter received an invoice for an additional three year subscription. After receiving a past due notice a month later and then cancelling his subscription, Plaintiff paid a pro-rated bill for the cost of XM services for the time period between automatic renewal and cancellation.

Plaintiff asserts the following three causes of action: 1) that XM's automatic renewal policy was a deceptive trade practice in violation of New York General Business Law

("GBL") § 349(a). (Am.Comp. ¶ 34)[1] and that XM violated New York General Obligations Law ("GOL") § 5–903 by providing inadequate notice of its automatic renewal practice; 2) that XM was unjustly enriched by collecting subscription charges from customers whose services were automatically renewed (*Id.* ¶ 37); and 3) that Plaintiff is entitled to injunctive relief in the form of an injunction compelling XM to comply with GOL § 5–903's notice provisions.

On April 4, 2011, Magistrate Judge Yanthis issued a Report and recommendation on (the "Report"), in which he recommended that Plaintiff's motion for class certification be denied, and issued an order staying discovery in this matter. (Docket Entry Nos. 106, 107). Plaintiff timely filed objections to the Report, and Defendant filed a reply to Plaintiff's objections. (Docket Entry No. 110–12.) This case was thereafter reassigned to this Court. (Docket Entry No. 113.)

## DISCUSSION

The Report recommends that Plaintiff's motion for class certification be denied. First, the Report finds that Plaintiff lacks Article III standing and as such cannot certify a Rule 23(b)(2) injunctive class. The Report also recommends that Plaintiff's claims under GBL § 349 and for unjust enrichment are not amenable to class certification under Rule 23(b)(3) on the basis that the elements of the causes of action are not susceptible to class-wide proof because common evidence does not support Plaintiff's claims on a class-wide basis. The need for individual inquiries on multiple issues make class certification inappropriate in this action. Specifically, because proposed class members who requested, wanted, or assented to automatic renewal cannot recover for unjust enrichment, individual inquiries are required to assess injury and determine damages. The Report also found that class treatment is precluded by the individual inquiries necessary to determine which proposed class members entered into "clickwrap" agreements. Furthermore, the Report found that individual defenses

---

**1.** "Am. Compl." refers to Plaintiff's Amended Class Action Complaint, dated October 16, 2008.

Defendant could submit against individual class members preclude treatment as a class.

### A. Standard of Review

United States Magistrate Judges hear dispositive motions and make proposed findings of fact and recommendations, generally in the form of a Report and Recommendation. In reviewing a Report and Recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

■■■ A party may file "specific written objections," Fed. R. Civ. P. 72(b), to a Magistrate Judge's proposed findings and recommendations, and in that case, the district court has an obligation to make a *de novo* determination as to those portions of the Report and Recommendation to which objections were made. 28 U.S.C. § 636(b)(1); *First Union Mortgage Corp., v. Smith,* 229 F.3d 992, 995 (10th Cir.2000). A district court judge, in making such determination, has discretion in the weight placed on proposed findings and recommendations and may afford a degree of deference to the Report and Recommendation. *See United States v. Raddatz,* 447 U.S. 667, 676, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980). Objections to a Report and Recommendation are to be "specific and are to address only those portions of the proposed findings to which the party objects." *Camardo v. General Motors Hourly–Rate Employees Pension Plan,* 806 F.Supp. 380, 381–82 (W.D.N.Y.1992). Objections that are "merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original [papers] will not suffice to invoke *de novo* review." *See Vega v. Artuz,* No. 97 Civ. 3775, 2002 WL 31174466, at *1, 2002 U.S. Dist. LEXIS 18270 (S.D.N.Y. Sept. 30, 2002).

■■ Where no timely objection has been made by either party, a district court need only find that "there is no clear error on the face of the record" in order to accept the Report and Recommendation. *Nelson v. Smith,* 618 F.Supp. 1186, 1189 (S.D.N.Y. 1985). In the event a party's objections are conclusory or general, or simply reiterate original arguments, the district court also reviews the Report and Recommendation for clear error.

### B. Plaintiff's Motion to Certify a Class

A putative class must be certified under the criteria of Federal Rules of Civil Procedure 23(a) and 23(b), and Plaintiffs bear the burden of establishing that they meet these requirements. Fed. R. Civ. Pro. 23(a)-(b). The requirements of 23(a) are referred to as: 1) numerosity; 2) commonality; 3) typicality; and 4) adequate representation. *See Moore v. PaineWebber, Inc.,* 306 F.3d 1247, 1252–53 (2d Cir.2002). If these are met, "the court must decide whether plaintiffs meet the predominance requirement, and whether a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed.R.Civ.P. 23(b)(3); *Presbyterian Church of Sudan v. Talisman Energy, Inc.,* 226 F.R.D. 456, 468–69 (S.D.N.Y.2005).

■■■ A plaintiff attempting to demonstrate predominance must show that the issues that are subject to generalized proof, and are thus applicable to the class as a whole, predominate over those issues subject to individualized proof. *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). The predominance factor assesses "whether proposed classes are sufficiently cohesive to warrant adjudication by representation" and is a more demanding analysis than the commonality requirement. *Moore* at 1252–53 (citing *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)); *Maneely v. City of Newburgh,* 208 F.R.D. 69, 76 (S.D.N.Y.2002). Accordingly, where the resolution of individual claims for relief would require individualized inquiries, this requirement is not met. This Court has reviewed the Report and Recommendation, Plaintiff's objections to the Report, Defendant's reply, and the materials in the record. This Court finds the Report well-reasoned, thorough, and supported by law. Plaintiff's objections, many of which reiterate arguments previously asserted in this proceeding, are unavailing. Accordingly, this Court con-

curs with the Report and adopts it as the Order of this Court.

### 1. Plaintiff Cannot Certify a Class Under Federal Rule of Civil Procedure 23(b)(2)

The Report finds that Plaintiff lacks standing to certify a Rule 23(b)(2) class because he was not an XM customer at the time this action was commenced. A plaintiff's standing is considered at the time the action was commenced. *Comer v. Cisneros*, 37 F.3d 775, 791 (2d Cir.1994). A plaintiff in actions for injunctive relief may not rely on past injuries to satisfy the injury-in-fact requirement. *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir.2004); *Deshawn E. v. Safir*, 156 F.3d 340, 344 (2d Cir.1998); *see also O'Shea v. Littleton*, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974) (stating that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief" if it is "unaccompanied by any continuing, present adverse effects.").

A class cannot be certified if a named plaintiff lacks Article III standing. *Cent. States Southeast & Southwest Areas Health & Welfare Fund v. Merck–Medco Managed Care, LLC*, 433 F.3d 181, 199 (2d Cir.2005) (quoting *Warth v. Seldin*, 422 U.S. 490, 502, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). Accordingly, the named plaintiff must "allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Warth*, 422 U.S. at 502, 95 S.Ct. 2197; *see also Hinds County, Miss. v. Wachovia Bank, N.A.*, 700 F.Supp.2d. 378, 392–93 (S.D.N.Y.2010).

Plaintiff cannot satisfy the injury-in-fact requirement in actions for injunctive relief by relying on past injuries for two primary reasons. Because Plaintiff was no longer an XM customer at the time this action was filed, he did not face future harm from XM's renewal policies. In addition, Plaintiff has demonstrated that he is now keenly aware of XM's renewal practices and policies, and as such, he is very unlikely to suffer from being billed without his knowledge.

Plaintiff claims that there has always been a likelihood that he would suffer future harm as demonstrated by the fact that he subscribed to Sirius, now Sirius XM and that, unlike cases cited, this case involves a situation which is likely to be repeated and where customers, including Plaintiff, are limited in their options and are forced to use Defendant's services in the future.

As stated in the Report, Plaintiff's lack of standing is based on the fact that Plaintiff was not an XM customer at the time he commenced the action, not based on the fact that Plaintiff paid the disputed charges.

### 2. Plaintiff Cannot Certify a Class Under Federal Rule of Civil Procedure 23(b)(3)

The Report finds that Plaintiff cannot demonstrate injury under GBL § 349 on a class-wide basis because individual issues predominate. Specifically, Plaintiff is unable to show injury to proposed class members on a class-wide basis, Defendant could submit individual defenses to Plaintiff's claims, and damage calculations require individual considerations.

Specifically, Plaintiff would necessarily have to show which of the proposed class members were actually injured when their subscriptions were automatically renewed. Whether a customer requested, wanted, or approved renewal of their subscription is not amenable to being proven through class-wide proof. Because Plaintiff is unable to prove through common evidence which customers in fact wanted their subscriptions to be automatically renewed, the predominance questions are not met. Furthermore, the fact that Defendant would likely submit individual defenses make this action inappropriate for class treatment. Among these defenses, as the Report discusses, are the voluntary payment doctrine, under which any proposed class member who was aware of Defendant's renewal policy cannot recover subscription fees in a GBL § 349 claim.

Similarly, Plaintiff's unjust enrichment claim is similarly not amenable to class treatment because of the individual inquiries

necessary to show the elements of unjust enrichment and whether or not subscribers were actually injured, given that subscribers who wanted or assented to renewal were not injured. Plaintiff's assertion that the Report improperly found that some proposed class members entered into clickwrap agreements with XM is without merit. Because unjust enrichment claims cannot lie where the parties have entered into a binding agreement, which in this case is the clickwrap agreement some subscribers entered into, individual determinations as to which proposed class members entered into these agreements are necessary.

As such, the Report properly found that Plaintiff's unjust enrichment claim is not amenable to class treatment. Plaintiff's arguments to the contrary are without merit and generally repeat arguments made in earlier pleadings.

### CONCLUSION

For the reasons set forth above, this Court concurs with the Report and Recommendation of Magistrate Judge Yanthis and adopts it as the Order of this Court, in its entirety. Accordingly, Plaintiff's motion for class certification is hereby denied.

SO ORDERED.

### REPORT AND RECOMMENDATION

GEORGE A. YANTHIS, United States Magistrate Judge.

TO THE HONORABLE CATHY SEIBEL, United States District Judge:

Plaintiff, Richard Vaccariello ("plaintiff" or "Vaccariello"), brought this action against defendant, XM Satellite Radio Inc. ("defendant" or "XM"), alleging that XM violated New York GEN. BUS. LAW § 349 ("GBL § 349") and was unjustly enriched through its practice of automatically renewing customers' subscriptions. Plaintiff also seeks injunctive relief mandating XM comply with the notice provisions of New York GEN.

OBLIG. LAW § 5–903 ("GOL § 5–903"). Pursuant to Fed.R.Civ.P. 23 ("Rule 23"), Vaccariello seeks to certify a class consisting of, "all residents of the State of New York who subscribed to XM Satellite radio service and have had their service plan automatically renewed at any time since June 11, 2005." For the reasons set forth below, I respectfully recommend denial of plaintiff's motion for class certification.

### I. BACKGROUND

#### A. *XM's Business Practices*

XM is a publically traded company that provides subscription based satellite radio services. (Am. Compl. ¶ 8; Dreyer Decl. Ex. H at ¶ 2 [1]). Approximately 600,000 New Yorkers subscribe to XM's service. (Def.'s Mem. in Opp'n to Pl.'s Mot. for Class Certification at 1 [2]). Defendant's service is available through XM compatible automobiles and radios as well as over the internet. (Dreyer Decl. Ex. H at ¶ 2). Customers subscribe to XM via the internet, phone, and mail. (Def.'s Mem. at 6). XM offers subscribers a variety of service plans. (*Id.*). These plans include monthly, quarterly, yearly and multi-year subscription options. (*Id.*). All of XM's plans require the subscriber to pre-pay the cost of their subscription. (*Id.* at 1; Mem. of Law in Support of Pl.'s Mot. for Class Certification at 5 [3]).

When a subscription expires, XM automatically renews the customer's service for an identical term. (*Id.* at 5–6; Def.'s Mem. at 1, 6–7). By way of example, at the end of a three year subscription a customer's service automatically renews for another three years. XM disclosed its automatic renewal policy to subscribers. (Reply Mem. of Law in Further Support of Pl.'s Mot. for Class Certification at 18–19 [4]; Def.'s Mem. at 7–14). However, the breadth and adequacy of these disclosures are in dispute. (*Id.;* Pl.'s Mem. at 36–37). *See also* (Pl.'s Reply Mem. at 18–19); (Def.'s Mem. at 25).

---

1. Citations to Declarations refers to the declarations submitted with this motion

2. Hereinafter Def.'s Mem.

3. Hereinafter Pl.'s Mem.

4. Hereinafter, Pl.'s Reply Mem.

### B. *Plaintiff's XM Account*

In January, 2004 Vaccariello leased a General Motors ("GM") Cadillac Escalade with a pre-installed XM radio. (Dreyer Decl. Ex. H at ¶ 5). On or about January 21, 2004 plaintiff began a free three month trial of XM radio. (*Id.* at ¶ 10). At the end of the trial period, April 2004, Vaccariello purchased a one year XM subscription. (*Id.* at ¶¶ 17–18).

In early April 2005, plaintiff called XM's Listener Care Center and purchased an additional three year subscription. (*Id.* at ¶ 44). At approximately the same time that he renewed his subscription, Vaccariello activated an XM online account. (*Id.* at ¶ 33). The XM online account allowed Vaccariello to listen to satellite radio over the internet. (*Id.*). Activation of this online account required plaintiff to click on a check box indicating that he read and accepted XM's terms and conditions of service. (*Id.* at ¶ 34; Pl.'s Mem. at 11). XM's terms and conditions stated, in part, that, "the term of this Agreement is indefinite and Services will continue until canceled." (Lochhaas Decl. Ex. X at 00681).

In early February 2008, several months prior to the end of his subscription, plaintiff returned his leased vehicle. (Dreyer Decl. Ex. H at ¶ 58). After turning in his vehicle and prior to actual renewal, XM alleges plaintiff was sent a letter advising him that his subscription was set to renew for an additional three years. (Def.'s Mem. at 17–18). In early April 2008, Vaccariello's subscription was in fact renewed. (Dreyer Decl. Ex. H at ¶ 60). Accordingly, plaintiff received an invoice for an additional three year subscription. (*Id.*).

Plaintiff failed to pay the April invoice and on or about May 9, 2008 received a past due notice. (*Id.* at ¶ 61). On that same day Vaccariello called XM and cancelled his subscription. (*Id.* at ¶ 64; Pl.'s Mem. at 12). After cancelling his subscription, XM sent plaintiff a pro-rated bill for the cost of satellite services rendered between automatic renewal and cancellation. (Dreyer Decl. Ex. H. at ¶ 63). Ultimately, by check dated May 29, 2008 the plaintiff paid his outstanding XM balance. (*Id.* at ¶ 65).

### C. *Plaintiff's Complaint*

Based on his interactions with XM, plaintiff commenced this action in his own name and on behalf of all other New York subscribers who had their service automatically renewed since June 11, 2005. (Am. Compl. at ¶ 1; Pl.'s Mem. at 1). In his complaint Vaccariello asserts three causes of action. First, plaintiff alleges that XM's automatic renewal policy was a deceptive trade practice in violation of GBL § 349. (Am. Compl. at ¶ 34). This cause of action is premised, in part, on the theory that nonconformity with GOL § 5–903 constitutes a per se violation of GBL § 349. (Pl.'s Mem. at 3, 22). Alternatively, Vaccariello argues that XM violated GBL § 349 by inadequately disclosing the requirement that subscribers affirmatively cancel their satellite service. (*Id.* at 3, 35). Second, Vaccariello alleges that XM was unjustly enriched by its collection of fees from subscribers whose service was automatically renewed. (Am. Compl. at ¶ 37). Third, plaintiff seeks an injunction compelling XM to conform with the notice provisions of GOL § 5–903. (*Id.* at ¶ 41).

## II. DISCUSSION

### A. *Legal Standard*

Motions for class certification are governed by Federal Rule of Civil Procedure 23. *See* Fed.R.Civ.P. 23. Rule 23(a) has four familiar requirements: "(1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation." *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 222 (2nd Cir.2008); *Pelman v. McDonald's Corp.*, 272 F.R.D. 82, 9–91 (S.D.N.Y.2010). In addition to satisfying these four criteria, the moving party must demonstrate that the class is maintainable under one of Rule 23(b)'s three subsections. *McLaughlin*, 522 F.3d at 222; *Brown v. Kelly*, 609 F.3d 467, 476 (2d Cir.2010).

In this case, plaintiff seeks to certify a class pursuant to Rule 23(b)(2) and (3). Rule 23(b)(2) permits certification where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."

*In re Visa Check/MasterMoney Anti–Trust Litig.* (*"In re Visa Check"*), 280 F.3d 124, 133 (2d Cir.2001), *overruled on other grounds by In re Initial Pub. Offering Sec. Litig.* (*"In re IPO"*), 471 F.3d 24 (2d Cir.2006); Fed. R.Civ.P. 23(b)(2). Rule 23(b)(3) certification requires a finding that "[t]he questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that the class action [mechanism] is superior to other available methods for fair and efficiently adjudicating the controversy." *In re Visa Check,* 280 F.3d at 133; Fed.R.Civ.P. 23(b)(3).

■■■ Courts must conduct a rigorous analysis of the moving party's compliance with Rule 23. *In re IPO,* 471 F.3d at 33 n. 3. Therefore, certification is only proper once the movant establishes each of the applicable requirements by a preponderance of the evidence. *Brown,* 609 F.3d at 476; *In re Flag Telecom Holdings, Ltd. Securities Litig.* (*"In re Flag Telecom"*), 574 F.3d 29, 35 (2d Cir. 2009); *In re IPO,* 471 F.3d at 41. In determining whether the moving party carried its burden, courts must resolve material factual disputes notwithstanding their overlap with merits issues. *Brown,* 609 F.3d at 476; *Weiner v. Snapple Beverage Corp.,* No. 07 Civ. 8742, 2010 WL 3119452, at *4 (S.D.N.Y. Aug. 5, 2010). Additionally, courts need not assess compliance with Rule 23(a) when the movant cannot satisfy Rule 23(b)'s requirements. *See McLaughlin,* 522 F.3d at 222; *Pelman,* 272 F.R.D. at 91–92; *Weiner,* 2010 WL 3119452, at *5. As such, this Court's analysis is confined to Rule 23(b)(2) and (3).

B. *Fed.R.Civ.P. 23(b)(2)*

■■■ Plaintiff cannot certify a Rule 23(b)(2) injunctive class because he lacks Article III standing. *See* U.S. CONST. art. III, § 2. The jurisdiction of federal courts are circumscribed to actual "cases" and "controversies." *W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche L.L.P.* (*"W.R. Huff"*), 549 F.3d 100, 106 (2d Cir.2008). *See* U.S. CONST. art. III, § 2. One element of the "case" and "controversy" requirement is standing. *Raines v. Byrd,* 521 U.S. 811, 818, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997); *W.R. Huff,* 549 F.3d at 106. Article III standing requires:

"(1) *injury-in-fact,* which is a concrete and particularized harm to a legally protected interest; (2) *causation* in the form of a fairly traceable connection between the asserted injury-in-fact and the alleged actions of the defendant; and (3) *redressability,* or a non-speculative likelihood that the injury can be remedied by the requested relief." *W.R. Huff,* 549 F.3d at 106–7; *See also Friends of the Earth Inc. v. Laidlaw Envtl. Services,* 528 U.S. 167, 180–1, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000); *Mid–Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.* (*"Mid–Hudson"*), 418 F.3d 168, 174 (2d Cir.2005).

■■■ The three irreducible elements of standing apply to each claim and form of relief sought. *Baur v. Veneman,* 352 F.3d 625, 642 n. 15 (2d Cir.2003). *See also Friends of the Earth Inc.,* 528 U.S. at 185, 120 S.Ct. 693. Plaintiff's standing as to each claim and form of relief is measured at the time the action is commenced. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 571 n. 5, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Comer v. Cisneros,* 37 F.3d 775, 791 (2d Cir.1994); *Fenstermaker v. Obama,* 354 Fed.Appx. 452, 455–56 (2d Cir.2009). Where, as in this case, the Court's jurisdiction is premised on diversity of citizenship, the plaintiff must have standing under both Article III and the applicable state law. *Mid–Hudson,* 418 F.3d at 173. *See* (Am. Compl. at ¶ 2); 28 U.S.C. 1332(d). These core standing requirements are in no way diminished by the fact that the plaintiff filed a class action suit. *Denney v. Deutsche Bank AG,* 443 F.3d 253, 263 (2d Cir.2006). Thus, if the named plaintiff lacks standing the "entire class action fails." *Dickerson v. Feldman,* 426 F.Supp.2d 130, 134 (S.D.N.Y.2006). *See Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care, L.L.C.,* 504 F.3d 229, 241 (2d Cir.2007); *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care, L.L.C.,* 433 F.3d 181, 199 (2d Cir.2005).

■■■ To satisfy standing's injury-in-fact requirement a plaintiff seeking injunctive relief must demonstrate: (1) a "likelihood of future harm"; *and* (2) "the existence of an official policy or its equivalent." *Shain v.*

*Ellison,* 356 F.3d 211, 216 (2d Cir.2004). *See White v. First Am. Registry,* 230 F.R.D. 365, 367 (S.D.N.Y.2005). As courts have explained, in actions for injunctive relief past injuries cannot satisfy the injury-in-fact requirement. *Shain,* 356 F.3d at 215; *Deshawn E. v. Safir,* 156 F.3d 340, 344 (2d Cir. 1998).

In this case, XM had an official policy of automatically renewing customer's subscriptions. However, Vaccariello cannot demonstrate that he faced a likelihood of future harm from XM's renewal policy. When this action was commenced, the time for testing plaintiff's standing, Vaccariello was no longer an XM customer. *See* (Pl.'s Mem. at 12) (plaintiff no longer an XM customer as of May 9, 2008); (*Id.* at 14) (initial complaint filed on June 11, 2008); (Mackiel Reply Decl. Ex. I at 94) (plaintiff subscribed to Sirius in January 2010). In the absence of a satellite subscription, plaintiff did not face a realistic possibility of future harm from XM's renewal policy at the time he filed the complaint.

Vaccariello's knowledge of XM's practices further vitiates the likelihood of future harm. The crux of plaintiffs complaint is that XM's customers unwittingly pay extra fees because they are unaware that their service automatically renews. As a result of his billing dispute with defendant, Vaccariello is now clearly aware of XM's billing practices. Given this knowledge, plaintiff is not likely to unwittingly face automatic renewal and its accompanying fees. Accordingly, there is insufficient evidence that Vaccariello is likely to suffer future harm from XM's policies. *See Laster v. T–Mobile USA Inc.,* No. 05cv1167, 2009 WL 4842801, at *4 (S.D.Cal. Dec. 14, 2009) (plaintiffs could not prove injury-in-fact and thus, lacked standing for injunctive relief when they were aware of defendant's deceptive practice). Plaintiff's multifaceted inability to demonstrate standing's injury-in-fact requirement is fatal to his motion for class certification under Rule 23(b)(2).

This Court has considered and ultimately concludes that plaintiff's arguments in favor of standing are unpersuasive. Vaccariello's reliance on *McNair v. Synapse Group Inc.,* No. 06–5072, 2009 WL 3754183 (D.N.J. Nov. 5, 2009), is misplaced. In *McNair* the District Court held that plaintiffs, who were no longer defendant's customers, had standing to seek an injunction. *Id.* at *4. In reaching this conclusion the Court found that the plaintiffs faced a likelihood of future harm from defendant, Synapse's, deceptive renewal practices. *Id.* Crucial to the Court's determination was the fact that Synapse was not clearly identified in its widely disseminated offers. *Id.* Thus, in the future plaintiffs were likely to unwittingly become defendant's customers and fall prey to Synapse's deceptive practices. *Id.* The District Judge also rejected the argument that plaintiffs were unlikely to face future harm because they were already aware of Synapse's deceptive conduct. *Id.* The Court reasoned that since defendant's conduct constantly evolved, prior knowledge of Synapse's practices would not innoculate consumers from the challenged deception. *Id.*

Crucial factual differences distinguish *McNair* from the case at bar. Different from Synapse, XM is not a secret force purveying satellite radio. As such, it is unlikely that a subscriber who canceled their service will unwittingly purchase an XM radio in the future. Therefore, one of the key rationales underlying the *McNair* decision is inapposite. *McNair* is also distinguishable on the grounds that XM's allegedly deceptive practices have remained constant over time. Thus, after experiencing automatic renewal a subscriber is unlikely to be deceived by the practice in the next billing cycle. Given these factual distinctions, *McNair* does not cure Vaccariello's lack of standing.

*Cassese v. Washington Mut. Inc.,* 255 F.R.D. 89 (E.D.N.Y.2008), like *McNair,* is readily distinguishable from the case at bar. In *Cassese* the Court did not address the named plaintiffs' standing. *Cassese,* 255 F.R.D. at 97. To the extent that standing was addressed, the Court focused on the propriety of certification where members of the proposed class had already paid disputed charges. *Id.* Thus, *Cassese* does not alleviate the injury-in-fact defect in plaintiff's standing.

Plaintiff's reliance on *Jermyn v. Best Buy Stores,* 256 F.R.D. 418 (S.D.N.Y.2009), is also

unpersuasive. In *Jermyn,* plaintiff sought an injunction preventing defendant, Best Buy, from either: "(1) advertising and promoting a price match guarantee or (2) enforcing its undisclosed Anti–Price Matching Policy." *Id.* at 433. At the time the plaintiff in *Jermyn* commenced his action there was a reasonable probability that he would purchase additional merchandise from Best Buy. Since Best Buy's Anti–Price Matching Policy applied to the sale of all merchandise, plaintiff faced a reasonable prospect of future harm from the policy. Unlike Best Buy's policy, by its terms XM's renewal practice only effects and injures current customers. At the time Vaccariello filed his complaint he was no longer an XM customer. Therefore, unlike the plaintiff in *Jermyn,* Vaccariello was incapable of suffering injury from XM's policies at the time his suit was filed. *Jermyn* is also distinguishable because the District Court's Rule 23(b)(2) analysis never addressed the named plaintiff's standing. *Id.* at 433–34. Based on these factual differences *Jermyn* does not support Vaccariello's standing.

Finally, GBL § 349(h)'s injunction provision cannot cure plaintiff's standing defect. In a diversity case, such as this, the plaintiff must possess Article III and statutory standing. *See Mid–Hudson,* 418 F.3d at 173. As was outlined above plaintiff lacks Article III standing and accordingly, GBL § 349(h) cannot cure this jurisdictional defect. Since the plaintiff lacked Article III standing at the time this action was commenced, I respectfully recommend that plaintiff's request to certify a Rule 23(b)(2) class be denied.

### C. *Fed.R.Civ.P. 23(b)(3)*

 For the reasons set forth below plaintiff's GBL § 349 and unjust enrichment claims are not susceptible to class certification under Rule 23(b)(3). Rule 23(b)(3)'s predominance requirement, "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Brown,* 609 F.3d at 476. Predominance is established when, "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, predominate over those issues that are sub-

ject only to individualized proof." *Id.* at 483 (internal quotations and citations omitted). In assessing predominance courts consider whether the elements of each cause of action are susceptible to common, class wide proof. *Weiner,* 2010 WL 3119452, at *5 (citing *In re Visa Check,* 280 F.3d at 136); *In re Currency Conversion Fee Antitrust Litig.* ("*In re Currency Conversion*"), 230 F.R.D. 303, 309–10 (S.D.N.Y.2004); *Pelman,* 272 F.R.D. at 91–92. Failure to establish that the elements of each cause of action are subject to class wide proof is sufficient grounds for denying class certification. *Id.; In re Currency Conversion,* 230 F.R.D. at 309–10.

 The applicability of individualized defenses to particular class members is another factor courts consider in adjudicating the predominance requirement. *McLaughlin,* 522 F.3d at 233; *Weiss v. La Suisse, Societe D'Assurances Sur La Vie,* 226 F.R.D. 446, 454 (S.D.N.Y.2005). *See also In re Visa Check,* 280 F.3d at 138 (the existence of defenses, though not controlling, is a factor considered in the predominance analysis). Likewise, difficulties in calculating damages factor into the predominance analysis. *McLaughlin,* 522 F.3d at 231; *Charron v. Pinnacle Group N.Y. L.L.C.,* 269 F.R.D. 221, 239–40 (S.D.N.Y.2010); *Weiner,* 2010 WL 3119452, at *6 n. 13. However, neither the existence of individual defenses nor difficulties in calculating damages in and of themselves defeat the predominance requirement. *McLaughlin,* 522 F.3d at 233.

#### (1) *GBL § 349*

Plaintiffs alleging a violation of GBL § 349's prohibition against deceptive acts and practices must prove: "(1) the [challenged] act was consumer oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result." *Spagnola v. Chubb Corp.,* 574 F.3d 64, 74 (2d Cir.2009). The injury prong requires that plaintiff suffer an actual injury, though not necessarily pecuniary harm. *Stutman v. Chemical Bank,* 95 N.Y.2d 24, 709 N.Y.S.2d 892, 731 N.E.2d 608, 612 (2000). However, the mere fact that a plaintiff was deceived by the defendant does not constitute actual injury. *Small v. Lorillard Tobacco Co.,* 252

A.D.2d 1, 679 N.Y.S.2d 593, 599 (1998). That is to say that deception is not a cognizable injury under GBL § 349.

Vaccariello's attempt to certify a class fails, in part, because he cannot prove the injury element of his GBL § 349 on a class wide basis. *Brissenden v. Time Warner Cable of New York City,* 25 Misc.3d 1084, 885 N.Y.S.2d 879 (N.Y.Sup.Ct.2009), is illustrative of why the injury element of plaintiff's claim is not susceptible to class wide proof. In *Brissenden,* plaintiff filed a class action under New York State law alleging that Time Warner was engaged in deceptive business practices that violated GBL § 349. *Id.* at 882. The crux of the complaint was that Time Warner, a cable provider, inadequately disclosed that customers were not required to rent cable converter boxes or remote controllers. *Id.* at 882–83. In denying plaintiff's class certification motion, the Court concluded that those customers who actually wanted the optional equipment were not injured by Time Warner's deficient disclosures. *Id.* at 885. Thus, class certification was denied because determining which customers were actually injured necessitated individual inquiries that would predominate over common questions. *Id.* at 884–86.

Vaccariello, like the plaintiff in *Brissenden,* faces an insurmountable challenge of proving class wide injury through common proof. Similar to Time Warner's customers, a portion of XM's 600,000 New York customers may have wanted their service automatically renewed. Like those Time Warner customers who wanted the optional equipment, XM subscribers who wished to have their service automatically renewed did not suffer a cognizable GBL § 349 injury. Accordingly, even if XM's disclosures were deficient, customers who desired automatic renewal are not entitled to relief under GBL § 349. Ascertaining which customers actually wanted renewal requires a myriad of individual inquiries that would predominate over any common questions. Plaintiffs inability to prove class wide injury through common evidence is, alone, grounds for denying Rule 23(b)(3) certification based on a lack of predominance. *See In re Currency Conversion,* 230 F.R.D. at 309–10.

XM's individual defenses against proposed class members further hampers plaintiff's ability to satisfy Rule 23(b)(3). These specific defenses include the voluntary payment doctrine as well as the existence of full or partial refunds. In a GBL § 349 claim the voluntary payment doctrine "bars recovery of payments voluntarily made with full knowledge of the facts." *Solomon v. Bell Atlantic Corp.,* 9 A.D.3d 49, 55, 777 N.Y.S.2d 50 (N.Y.App.Div.2004); *Newman v. RCN Telecom Services Inc.,* 238 F.R.D. 57, 78 (S.D.N.Y.2006) (same). Accordingly, any class member who knew of XM's automatic renewal policy and continued to pay for their service is barred from recovering their subscription fees. Thus, individual inquiries are necessary to determine which class members knew of XM's policies but, nevertheless continued to renew their services.

XM's ability to assert a defense based on the existence of credits and refunds also raises individual issues. Under New York law, a plaintiff who has received billing credits as compensation for defendant's allegedly deceptive practices is prohibited from asserting a GBL § 349 claim. *Solomon,* 9 A.D.3d at 55, 777 N.Y.S.2d 50. As the record in this case indicates, a number of proposed class members may have received billing credits from XM. *See* (Hagemann Decl. at ¶ 12); (Coleman Decl. Ex. A at 0426541). Determining which proposed class members received credits raises additional individual issues. Accordingly, the inability to prove the injury element of GBL § 349 through common evidence coupled with the existence of individual defenses vitiates plaintiff's ability to satisfy Rule 23(b)(3)'s predominance requirement.

Vaccariello's reliance on *Jermyn, Dupler v. Costco Wholesale Corp.,* 249 F.R.D. 29 (E.D.N.Y.2008), and GOL § 5–903 does not salvage the lack of predominance in this case. Plaintiff's inability to prove damages on a class wide basis distinguishes this case from *Jermyn* and *Dupler.* In both cases the plaintiffs and proposed classes suffered clearly identifiable injury. In *Jermyn,* consumers paid 15% restocking fees and were denied promised monetary incentives as a result of Best Buy's Anti–Price Disclosure Policy.

*Jermyn,* 256 F.R.D. at 427–28. In *Dupler* consumers paid for year long memberships and in return received benefits that lasted less than a year. *Dupler,* 249 F.R.D. at 34. In the case at bar, not all of the class members suffered a clearly identifiable injury because there were subscribers who wanted automatic renewal. Based on this distinction *Jermyn* and *Dupler* do not obviate the deficiencies in plaintiff's class certification motion.

Additionally, plaintiff's reliance on GOL § 5–903 does not overcome the lack of predominance. Vaccariello, throughout his motion papers, argues that defendant's noncompliance with GOL § 5–903 raises common questions that predominate over individual issues. However, by its plain language GOL § 5–903 simply provides consumers with a defense against automatically renewing contracts. *See* New York GEN. OBLIG. LAW § 5–903 ("Automatic renewal provision of contract for service ... *unenforceable* by contractor unless notice thereof given to recipient of service.") (emphasis added). The statute does not, as plaintiff implies, create mandatory obligations that can serve as the predicate for a causes of action. Plaintiff has failed to cite a single case where noncompliance with GOL § 5–903's disclosure requirements constituted an independent cause of action or was held to violate GBL § 349. In fact New York courts have affirmatively held that GOL § 5–903 does not create an independent cause of action. *See Ovitz v. Bloomberg L.P.,* 77 A.D.3d 515, 909 N.Y.S.2d 710, 711–12 (N.Y.App.Div.2010), *leave to appeal granted,* 16 N.Y.3d 705, 2011 WL 536740 (N.Y.2011). Since noncompliance with GOL § 5–903 cannot serve as the predicate for a cause of action, XM's "violation" of the statute is irrelevant to the predominance analysis. Based on the foregoing reasons, I respectfully recommend denial of plaintiffs motion to certify a class for his GBL § 349 claim.

*(2) Unjust Enrichment*

 In New York a plaintiff suing on the theory of unjust enrichment must prove: "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Lei-*

*bowitz v. Cornell Univ.,* 584 F.3d 487, 509 (2d. Cir.2009) (citation omitted). The Second Circuit has explained that: "The theory of unjust enrichment lies as a quasi-contract claim. It is an obligation the law creates in the absence of any agreement." *Beth Israel Medical Center v. Horizon Blue Cross & Blue Shield ("Beth Israel"),* 448 F.3d 573, 586 (2d Cir.2006) (quotations and citations omitted) Therefore, an unjust enrichment claim will not lie where there is a valid and enforceable contract covering the disputed subject matter. *Id.* at 587 (citing *Clark–Fitzpatrick, Inc. v. Long Island R.R. Co.,* 70 N.Y.2d 382, 388–389, 521 N.Y.S.2d 653, 516 N.E.2d 190 (N.Y.1987)); *Goldman v. Metropolitan Life Insurance Co.,* 5 N.Y.3d 561, 572, 807 N.Y.S.2d 583, 841 N.E.2d 742 (N.Y. 2005).

Plaintiffs attempt to certify a class as to his unjust enrichment claim fails, in part, because the elements of the cause of action are not susceptible to class wide proof. Specifically plaintiff cannot prove through common evidence that equity and good conscience require restitution. An "indispensable ingredient" of the equity and good conscience requirement is the existence of "an injustice as between the two parties involved." *In re Jetblue Airways Corp. Privacy Litig.,* 379 F.Supp.2d 299, 330 (E.D.N.Y.2005). In this case, plaintiff cannot demonstrate through class wide evidence that it was unjust for XM to collect fees from all of the customers whose service was renewed. For example, XM may have collected fees from customers who wanted automatic renewal. It was not unjust to collect compensation for the provision of these requested services. Likewise, defendant did not reap an improper benefit from subscribers who initially complained about automatic renewal but, ultimately continued to listen to XM. Defendant was clearly entitled to collect fees from those who, despite their complaints, continued to listen to satellite radio.

Accordingly, individual inquiries are necessary to determine which proposed class members wanted automatic renewal and/or continued to listen to satellite radio after renewal, as these subscribers cannot recover for unjust enrichment. Such individualized

inquiries vitiate Vaccariello's ability to prove the elements of unjust enrichment on a class wide basis. *See Dungan v. Academy at Ivy Ridge*, 249 F.R.D. 413, 427 (N.D.N.Y.2008) (lack of predominance when individual inquiries are necessary to determine whether equity and good conscience require restitution). Plaintiffs inability to prove the elements of his claim through common evidence, in and of itself, defeats Rule 23(b)(3)'s predominance requirement.

 Moreover, plaintiff cannot prove through common evidence that members of the proposed class are entitled to recover damages under the theory of unjust enrichment. Unjust enrichment claims only lie in the absence of a binding agreement between the parties. *See Beth Israel*, 448 F.3d at 586–87. In this case, a plethora of proposed class members entered into "Clickwrap"[5] agreements with XM. *See* (Lochhaas Decl. at ¶¶ 9, 13) (identifying various times XM customers may have entered "clickwrap" agreements). "Clickwrap" agreements are one of the primary ways that parties enter into binding contracts over the internet. *Hines*, 668 F.Supp.2d at 366. *See also Specht v. Netscape Commc'ns Corp.*, 150 F.Supp.2d 585, 594 (S.D.N.Y.2001) (courts who have considered "clickwrap" agreements have held them to be valid and enforceable).

The "clickwrap" agreements in this case required subscribers to accept XM's customer agreement prior to receiving satellite radio service. *See* (Lochhaas Decl. at ¶ 9). One of the terms in every customer agreement informed subscribers, in some form, that their service was continuous. *See e.g.,* (Lochhaas Decl. Ex. J at 08822). Therefore, a number of XM customers entered a valid contract that addressed the disputed matter in this case, automatic renewal. Accordingly, subscribers who accepted the "clickwrap" agreement cannot recover under the unjust enrichment claim. *See Beth Israel*, 448 F.3d at 586–87. Determining which of XM's 600,-000 New York customers accepted the "clickwrap" agreements and thus, are barred from

recovery necessitates individual inquiries. These individual inquiries would predominate over common questions. Since plaintiff cannot prove, through common evidence, the elements of unjust enrichment or that class members are entitled to relief under this claim, I respectfully recommend the denial of class certification.

## III. CONCLUSION

For the reasons set forth above, I respectfully recommend that plaintiffs motion for class certification be denied in its entirety.

## IV. NOTICE

Pursuant to 28 U.S.C. § 636(b)(1)(C), as amended, and Fed.R.Civ.P. 72(b), the parties shall have fourteen (14) days from receipt of this Report to serve and file written objections to this Report and Recommendation. If copies of this Report are served upon the parties by mail, the parties shall have seventeen (17) days from receipt of this Report to file and serve written objections. *See* Fed. R.Civ.P. 6(d). Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Cathy Seibel, United States District Court, Southern District of New York, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at said Courthouse.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered. *See Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir.2008).

Requests for extensions of time to file objections must be made to the Honorable Cathy Seibel and not to the undersigned.

Dated: April 4, 2011

---

**5.** "Clickwrap" agreements generally entail a website user clicking an "I accept" box after being presented with terms and conditions. *See Hines v. Overstock.com, Inc.*, 668 F.Supp.2d 362, 366 (E.D.N.Y.2009); *TradeComet.com L.L.C. v. Google, Inc.*, 693 F.Supp.2d 370, 377 n. 4 (S.D.N.Y.2010).